## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **MICHAEL A. GOMEZ and NORA A. GOMEZ, on behalf of themselves and all others similarly situated,** | § § § § § | |
| **Plaintiffs,** | § § | **CAUSE NO. 1:16-CV-119** |
| **v.** | § § | **JURY TRIAL DEMANDED** |
| **NIEMANN & HEYER, L.L.P.,** | § § § | |
| **Defendant.** | § | |

### CLASS ACTION COMPLAINT

Plaintiffs Michael A. Gomez and Nora A. Gomez, on behalf of themselves and all others similarly situated, bring this class action based on the illegal and injurious acts of Defendant Niemann & Heyer, L.L.P., a law firm that engages in debt collection on behalf of homeowners associations ("HOAs"), which acts include using deceptive and unfair practices in attempting to collect debts, and taking unauthorized and unreasonable fees from Plaintiffs and similarly situated persons. Upon personal knowledge as to themselves and upon information and belief as to other matters, Plaintiffs, on behalf of themselves and all others similarly situated, allege as follows:

### INTRODUCTION

1.     This lawsuit seeks to vindicate the rights of Texas homeowners who live in a residence managed by a HOA and who have been exploited for years by Niemann & Heyer, L.L.P. ("Niemann & Heyer").

27458303.v5

2.      Niemann & Heyer has collected unauthorized fees and used deceptive and unfair practices in attempting to collect debts from Texas homeowners, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the Texas Fair Debt Collection Practices Act, TEX. FIN. CODE ANN. § 392 *et seq.* ("TFDCPA"), and Texas common law.

3.      Niemann & Heyer has devised a scheme to ensnarl homeowners in an escalating fee trap based on materially misleading debt collection letters. Niemann & Heyer is the debt collection agent for hundreds of HOAs in Texas. Once hired to collect an alleged debt for an HOA, Niemann & Heyer sends homeowners boilerplate collection letters that are uniformly misleading because they do not identify the original violation or fine with specificity or separate the amount of the initial fine or assessment from the add-on late fines, attorneys' fees, and other charges. These add-on charges are improper liquidated damages or unlawful penalties because they far exceed the amount of the initial fine or assessment.

4.      Moreover, Defendant hopes that homeowners do not pay the fines on time or cannot afford to pay so that it can pressure homeowners into paying unreasonable and usurious fees by threatening to sell their homes in foreclosure proceedings. Homeowners who cannot afford to pay these fees and inquire about making payments over time are offered payment plans that include unreasonable "administrative fees" that impose an effective annual interest rate that would make a loan shark blush. Most homeowners end up paying these outrageous fees because they fear foreclosure or lack the resources to take on these HOA management

2

companies and their debt-collector law firms. Niemann & Heyer's outrageous "administrative fees" for payment plans exploit financially distressed families who cannot afford to pay the add-on penalties in a lump-sum payment.

5.     Unlike ordinary consumer debt collectors, Niemann & Heyer has significant leverage over homeowners because the debt is secured by the homestead. Niemann & Heyer effectively uses this leverage by threatening homeowners with liens and foreclosures.

6.     After receiving a misleading demand letter for $325.56 from Niemann & Heyer on August 25, 2015, Plaintiffs requested a payment plan.  Under the Texas Residential Property Owners Protection Act, Tex. Prop. Code Ann. § 209.001 et seq., HOAs must provide homeowners a payment-plan option to pay HOA fines and assessments without incurring penalties or unreasonable fees. But Niemann & Heyer charged Plaintiffs a $200 "administrative fee" for an eight-month payment plan—an effective annual interest rate of approximately 143%.

7.     For years, Niemann & Heyer has used deceptive and unfair means to collect debts and illegal fees from thousands of Texas homeowners. This lawsuit seeks to put an end to these predatory practices.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over Plaintiffs' federal-law claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), and supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

9.     Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

3

10.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Plaintiffs and Defendant are residents of Texas, Defendant collects debts in Texas, and a substantial part of the unlawful conduct that is the subject of this lawsuit occurred within the Western District of Texas.

## PARTIES

**Plaintiffs Michael and Nora Gomez**

11.    Plaintiffs Michael A. Gomez and Nora A. Gomez are individuals residing at 1205 Battenburg Trail, Pflugerville, Texas 78660.

12.    Plaintiffs Michael and Nora Gomez are married and have four children.

13.    The Gomez family's home is located in a subdivision controlled by the Brookfield Owners Association, Inc. ("Brookfield HOA").

14.    Michael Gomez is 48 years old and worked at Dell Computers for 15 years until his job was outsourced to Juarez, Mexico. After being laid off by Dell, Mr. Gomez has struggled to find a full-time job because of his health condition—he suffers from diabetes and recently received a kidney transplant. Determined to support his family, Mr. Gomez worked odd jobs and made less than one-third of his Dell salary. Finally, after over a year of looking for full-time employment, Mr. Gomez found a job at Miller Imaging and Design.

15.    Nora Gomez is 41 years old and is currently employed with the Texas Department of Family and Protective Services. She has been a secretary at the Child Protective Services division for 11 years. During her husband's illness, Mrs. Gomez was the family's sole bread-winner.

4

**Defendant Niemann & Heyer**

16.     Defendant Niemann & Heyer is a Texas limited liability partnership with its principal place of business located at 1122 Colorado Street, Suite 313, Austin, Texas 78701. Niemann & Heyer is a law firm and is regularly engaged in the business of collecting consumer debts alleged to be due to another via mail, telephone, internet, and civil debt-collection lawsuits. Niemann & Heyer's principal business is debt collection. Niemann & Heyer is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).   Furthermore, Niemann & Heyer has made public representations, through its agents, that it is a debt collector.

17.     Niemann & Heyer is a debt collector for over 200 HOAs in Texas, which range in size from an eight-unit condominium development to a subdivision with over 5500 residences.

18.     Niemann & Heyer actively lobbies to protect the interests of HOA management companies and trade groups, and claims to "have been instrumental in drafting all major Texas [HOA] statutes in the last 15 years, including the Texas Uniform Condominium Act and the Texas Real Property Owners Protection Act."

19.     Niemann & Heyer boasts that it "has been able to satisfactorily settle approximately 95 percent of the accounts it manages (*i.e*, owner pays all amounts owed, including legal fees and costs), whether by obtaining a payment in full or a board-approved payment plan." This is not surprising given the extreme leverage Niemann & Heyer has over homeowners—it coerces homeowners into paying ever-escalating fees and penalties under the threat of foreclosure.

20.     Niemann & Heyer represents the Brookfield Owners Association, Inc. ("Brookfield HOA") and regularly collects debts allegedly owed to the Brookfield HOA, including through the initiation of civil debt-collection lawsuits.

21.     Niemann & Heyer has not obtained a surety bond (debt collectors bond) and filed a copy of the bond with the Office of the Texas Secretary of State as required by Section 392.101 of the Texas Finance Code.[1] Unless it is somehow covered by the bond filed by "Niemann & Niemann LLP," Niemann & Heyer is not authorized to engage in debt collection in Texas on behalf of the Brookfield HOA and other HOAs it represents.

22.     Niemann & Heyer's debt-collection efforts in Texas are potentially unlawful because it does not appear to have an active surety bond with a surety company authorized to do business in Texas and has not filed a copy of the bond with the Texas Secretary of State.

## FACTUAL BACKGROUND

### Symbiotic Relationship—HOA Management Companies and Niemann & Heyer

23.     Mandatory HOAs began in the 1970s when vast tracts of bare land were converted into neighborhoods in suburban America. Currently, four out of five new

---

[1] The Texas Secretary of State maintains a website with a debt-collector search tool at https://direct.sos.state.tx.us/debtcollectors/DCSearch.asp. On this site, one can search for individuals and entities that have filed debt-collector bonds with the Office of the Texas Secretary of State. The search results will indicate, based on the information filed with the Office of the Texas Secretary of State, whether the bond is active, is pending cancellation, or has been cancelled. The search results show that a firm named Niemann & Niemann LLP has an active bond through the Western Surety Company and was filed on October 13, 2009. However, there is no record of Niemann & Heyer LLP filing a copy of their bond with the Office of the Texas Secretary of State.

homes built in metropolitan areas are in communities governed by an HOA, and over 3.4 million Texans live in homes that are managed by an HOA.

24.    HOAs were created for the benefit of the residents who live in the neighborhood and operate like a government agency, assuming responsibility for duties that a city or county would typically perform: maintaining parks and pools, providing utilities, repairing streets, and in some instances enforcing various rules.

25.    Because HOAs provide services that a local government would otherwise provide, many cities and counties often require new residential developments to create an HOA.  And in places like Pflugerville, Texas (where the Gomez family lives)—one of the fastest-growing towns in the country—outsourcing these services to an HOA management company may be the only viable option for a cash-strapped local government.

26.    Although HOAs are supposed to be governed by residents who serve on the HOA board, most HOAs have completely outsourced day-to-day functions to third-party HOA management companies.

27.    Although HOA management has become a billion-dollar business, it is relatively low-margin—the grocery stores of property management. HOA management companies make their real money through add-on services, one of the most lucrative being the collection of debts, late fees, fines, and "administrative fees" from payment plans.

28.    HOA management companies offer full-service, contingency-based, third-party debt collection services. Unscrupulous HOA management companies

have devised a scheme to make money for themselves and their debt-collecting lawyers by shaking down homeowners for petty violations of an ever-expanding set of HOA rules drafted by their lawyers and debt collectors.

29.     When properly managed by residents of a community, HOAs serve a vital role in preserving aesthetics and property values within the community. Most importantly, an HOA collects association dues to maintain the common areas of the community. Another valid role of the HOA is to monitor and enforce deed restrictions to preserve the architectural appearance of the neighborhood.

30.     But when the HOA management function is outsourced to third parties that have a financial incentive to impose fines and penalties on homeowners, there is tremendous potential for abuse. HOA management companies often hire individuals to drive around neighborhoods to photograph alleged violations of HOA rules. The HOA management company mails or e-mails the photograph of the purported violation to the homeowner and demands that they cure the violation within a certain time period or face fines, penalties, and even foreclosure of their home. These letters rarely (if ever) identify the specific HOA rule that has been violated.

**The Shakedown—a basketball goal in Plaintiffs' driveway leads to thousands of dollars in fees and a foreclosure action**

31.     A good example of this abuse happened to Plaintiffs. In 2012, the company managing the Brookfield HOA hired Niemann & Heyer to collect debts based on an initial $25 fine on Plaintiffs because the family had a portable basketball goal in the driveway. Mr. Gomez had recently lost his job at Dell and had serious health issues—he had a kidney transplant in November 2012. The Gomez family owed thousands of dollars in unpaid medical expenses and could not afford to pay the fine.

32.     This, of course, is exactly what Defendant wants—its business model is based on the inability of homeowners to pay HOA fines. By early 2013, this $25 fine for a kid's basketball goal had grown to over $2500 with late penalties and attorneys' fees. Defendant Niemann & Heyer filed a foreclosure action against Plaintiffs in 2013.[2]

33.     The Gomezes weren't the only ones exploited by the Brookfield HOA's management company and Niemann & Heyer. Their neighbor Shawn Riggs faced a similar ordeal. Riggs received a $50 fine assessment from the Brookfield HOA for allegedly failing to mow his lawn, but the HOA management company sent notice of the violation to the wrong address. Undeterred by Riggs's repeated attempts to explain that the HOA had made a mistake, this $50 fine grew into putative late fees and penalties in excess of $2000. In February 2013, Riggs received a foreclosure notice

---

[2] The foreclosure action against the Gomez family was dismissed.  Accordingly, Plaintiffs' claims are not based on this fine, which is provided as an example of Defendant's unscrupulous business model.

filed by Defendant Niemann & Heyer. Riggs's ordeal is well documented in an article published on May 20, 2013 in the Texas Tribune, available at http://www.texastribune.org/2013/05/20/conflicts-and-interests-sen-john-carona/. (*See* Ex. 1.)

34.    Defendant Niemann & Heyer has filed at least eighteen such foreclosure actions in Travis County alone in the last few years.

**The Payment-Plan Racket**

35.    In 2011, responding to public outcry from Texas homeowners facing foreclosure actions by HOAs, the Texas Legislature enacted the Texas Residential Property Owners Protection Act ("TRPOPA"). A key provision of the statute requires all HOAs in Texas (composed of more than fourteen lots) to provide a payment-plan option to homeowners

> by which an owner may make partial payments to the property owners' association for delinquent regular or special assessments or any other amount owed to the association without accruing additional monetary penalties.  For the purposes of this section, monetary penalties do not include reasonable costs with administering the payment plan or interest.

Tex. Prop. Code Ann. § 209.0062(a) (emphases added).

36.    Thus, under the express provisions of the TRPOPA, it is illegal to charge a homeowner an unreasonable fee to administer an HOA payment plan.

37.    Undeterred by the requirements of the TRPOPA, Defendant charged and collected unreasonable fees to administer payment plans against Plaintiffs and class members.

38.    On August 25, 2015, Defendant Niemann & Heyer sent Plaintiffs a letter demanding that they pay "$325.26 to bring your account current through August 15, 2015." (Ex. 2)  The letter does not explain the basis for this alleged debt—it simply says the debt is for "certain assessments and other sums owed to the Association."[3]  The letter provides that the $325.56 debt "includes attorney's fees incurred to date," but the letter doesn't state how much in attorney's fees is included in the alleged debt. The letter provides the Gomez family 30 days to make the payment. The letter goes on to threaten a host of additional fees and charges, including "a minimum charge of $2,500" in attorneys' fees "with the possibility that the final amount will be much higher."

39.    The Gomez family contacted Niemann & Heyer within the 30-day deadline and requested a payment plan for the putative $325.56 debt.

40.    On September 18, 2015, Defendant Niemann & Heyer sent Plaintiffs a proposed payment plan that fraudulently raised the amount of the alleged debt and imposed an outrageous and usurious administration fee of $200. (Ex. 3.) Specifically, the letter provided that:

> Per your request, enclosed is a Payment Plan that will allow you to satisfy your current debt to the Association without additional collection efforts being taken against you.  This Payment Plan is for a term of 8 months and provides for a total amount due of $782.44.  This amount includes $200 in fees for administering the Payment Plan.

*Id.*

---

[3] The Brookfield HOA charges a quarterly assessment of $84 per quarter, due on January 1, April 1, July 1, and October 1.  It is unclear how Niemann & Heyer calculated the amount due as of August 15 at $325.56.

41.    Here is how Defendant increased the debt by over $456 in just three weeks. First, Defendant fraudulently increased the current charges (as of August 15, 2015) from $325.56 to $414.44. Niemann & Heyer's August 25, 2015 letter expressly demanded that the Gomez family "pay $325.56 to bring your account current through August 15, 2015." Defendant simply added $88.88 without providing any explanation for the add-on charge

42.    Second, Defendant included in the payment plan "future assessments and other charges during the life of the Payment Plan" of $168.00. Presumably, Niemann & Heyer added the $84.00 quarterly assessments due on October 1, 2015 and January 1, 2016.

43.    Finally, and in violation of the TRPOPA, Defendant imposed an unreasonable and usurious fee of $200 to administer the payment plan. Based on the alleged debt of $325.56, this $200 fee is an effective annual interest rate of approximately 143%—more than 14 times the legal interest rate in Texas (*i.e.*, 10%).

44.    Defendant Niemann & Heyer routinely charges Texas homeowners at least a $200 administration fee for payment plans of 8 months or less, and charges $250 for payment plans longer than 8 months. An administrative fee of $200 for a payment plan is unreasonable on its face—it bears no rational relation to the *de minimis* cost of administering the payment plan and represents a usurious interest rate that exploits homeowners.

45.    By way of comparison, the City of Austin Municipal Court charges a $25 administrative fee for payment plans for fines and tickets. Also, Texas law caps the

administrative fee that a second mortgage lender can charge borrowers at $25. Texas

Finance Code § 342.308. The following are examples of "administrative fees" for

payment plans:

|  | Entity | Fee Amount | Source |
|---|---|---|---|
| 1. | Austin Municipal Court | $25 | https://www.austintexas.gov/department/municipal-court |
| 2. | Spring Branch Oaks Civic Association | $15 | http://www.springbranchoaks.com/pages/documents.html |
| 3. | City of Pasadena Water Billing Office | $20 | http://www.ci.pasadena.tx.us/users/0033/docs/Deferred%20Payment%20Plan.pdf |
| 4. | Irving Municipal Court | $25 | http://cityofirving.org/329/Payment-Options |
| 5. | City of Grand Prairie Municipal Court | $25 | http://www.gptx.org/city-government/city-departments/departments-g-z/municipal-court/payment-information |
| 6. | City of Nederland Municipal Court | $25 | http://www.ci.nederland.tx.us/court/ |
| 7. | City of Lewisville Municipal Court | $25 | http://www.cityoflewisville.com/index.aspx?page=397 |
| 8. | Lone Star College | $20 | http://www.lonestar.edu/payment.htm |
| 9. | Flying L Ranch Property Owners' Association, Inc. | $25 | http://www.flyinglpoa.com/ |
| 10. | Martindale Texas Municipal Court | $25 | http://www.martindaletexas.org/plea%20formrevision1.htm |

46.    These examples are illustrative of the type of reasonable administrative

fees charged by other organizations in Texas, and stand in sharp contrast to the

Defendant's $200 administrative fee.

## CLASS ALLEGATIONS

47.     Plaintiffs bring this action individually and as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following Classes:

    a.  All persons who were charged and paid an unreasonable fee to Niemann & Heyer to administer a payment plan.

    b.  All persons who received a demand letter from Niemann & Heyer that did not identify the basis of the alleged debt or separately identify the amount of the initial fine or assessment from the alleged add-on charges, such as late penalties and attorney's fees.

    c.  All persons who paid late penalties and other fees and charges to Niemann & Heyer that were so far in excess to the original fine or assessment that the excess amounts constitute illegal liquidated damages or illegal penalties under Texas law.

    d.  All persons who paid a HOA debt to Niemann & Heyer when Niemann & Heyer did not have an adequate surety bond required by Texas Finance Code §392.101.

48.     The Classes do not include:

    a.  Defendant, or Defendant's officers, directors, agents, employees, or counsel;

    b.  Class Counsel, employees of Class Counsel's firm, or Class Counsel's immediate family members; or

    c.  the presiding Judge and their immediate family members.

49.    The Classes are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendant, Plaintiffs aver, upon information and belief, that Defendant has collected or attempted to collect a debt from thousands of homeowners in Texas. Accordingly, Plaintiffs estimate that the class size numbers in the thousands.

50.    There are questions of law and fact common to the Classes that predominate over any questions affecting only individual class members. The principal question is whether the Defendant violated the FDCPA, TFDCPA, TRPOPA, and Texas common law by:

      a.  improperly collecting additional fees, penalties, costs or charges that are so far in excess of the original assessment or fine that they constitute unlawful liquidated damages or unenforceable penalties under Texas law;

      b.  charging an unreasonable and/or usurious fees to administer a payment plan;

      c.  using improper and deceptive means in collecting the alleged debts;

      d.  collecting a HOA debt when Defendant did not have an adequate surety bond required by Texas Finance Code §392.101.

51.    Plaintiffs' claims are typical of the claims of the Classes, which all arise from similar facts—namely, the use of false or misleading form demand letters, the collection of unlawful liquidated damages, and the collection of unreasonable administrative fees—and are based on the same legal theories.

52.     Mr. and Mrs. Gomez ("Representative Plaintiffs") will fairly and adequately protect the interests of the Classes. Representative Plaintiffs are committed to vigorously litigating this matter and have retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Representative Plaintiffs nor their counsel have any interest which might cause them not to vigorously pursue these claims.

53.     This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members who are not parties to the adjudications or substantially impair or impede their ability to protect their interests.

54.     Whether Defendant unlawfully charged unauthorized and unreasonable fees and made false or misleading statements in the collection of alleged debts from the Representative Plaintiffs and the Classes can be easily determined by a ministerial inspection of Defendant's business records.

55.     A class action is a superior method for the fair and efficient adjudication of this dispute. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is slight because the unauthorized and unreasonable fees charge by Defendant are relatively small. Management of the

Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be easily obtained from Defendant's business records.

56.     All conditions precedent to the filing this suit and Plaintiffs' right to recovery have been performed or have occurred.

## <u>COUNT I: FAIR DEBT COLLECTION PRACTICES ACT</u>

57.     Plaintiffs hereby restate, re-allege, and incorporate by reference all foregoing paragraphs.

58.      Defendant is a "debt collector" as defined by section 1692a(6) of the FDCPA.

59.     Plaintiffs are "consumers" as defined by section 1692a(3) of the FDCPA.

60.     Defendant violated the FDCPA. Defendant's violations include violations of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(8), 1692e(10), 1692f(1), 1692f(6)(A), and 1692g as evidenced by the following conduct:

a. **Falsely representing the amount, character, or legal status of the debt**.  In particular, Defendant sent Class members form debt-collection demand letters that did not specifically identify the basis of the alleged assessment or fine. Moreover, Defendant's form letters do not separately identify the original assessment or fine from the add-on late charges, penalties and attorneys' fees. Defendant's collection letters misrepresent the legal status of the debt because Defendant did not have

the legal right to collect any debts in Texas because they did not have an adequate surety bond required by Texas Finance Code §392.101;

b. **Collection of an amount from the consumer that is not authorized by agreement or permitted by law**. Under the TRPOPA, HOAs are permitted to charge only "reasonable" administrative fees and interest for payment plans. Defendant charged Class members unreasonable and usurious fees for administering payment plans. Moreover, Defendant collected unlawful liquidated damages or illegal penalties from Class members that were grossly in excess of the amount of the original assessment or fine. Defendant's collection of debts from Plaintiffs and Class Members was not permitted by law because Defendant did not have an adequate surety bond required by Texas Finance Code §392.101.

c. **Failing to validate a disputed debt.** As previously noted, Defendant sent Class members form debt-collection demand letters that did not specifically identify the basis of the alleged assessment or fine. Moreover, Defendant's form letters do not separately identify the original assessment or fine from the add-on late charges, penalties, and attorney's fees.

d. **Otherwise using false, deceptive, misleading and unfair, or unconscionable means to collect or attempt to collect a debt from the consumer.** As previously noted, Defendant's form debt-

18

collection letters were "false, deceptive, [and] misleading" because they did not specifically identify the basis of the alleged assessment or fine and they did not separately identify the original assessment or fine from the add-on late charges, penalties, and attorneys' fees. Defendant used unfair and unconscionable means to collect debts from class members because they charged unlawful liquidated damages and illegal penalties to Class members and charged unreasonable "administrative fees" for payment plans—all under the threat of foreclosure proceedings.

61.    Defendant's acts and/or omissions, as described above, were done with intentional and negligent disregard for Plaintiffs' rights under the law and with the purpose of coercing Plaintiffs to pay monies not truly owed.

62.    As a result of the above violations of the FDCPA, Defendant is liable to Plaintiffs and the Classes in the sum of Plaintiffs' statutory damages, actual damages, and attorneys' fees and costs.

## COUNT II: TEXAS FAIR DEBT COLLECTION PRACTICES ACT

63.    Plaintiffs hereby restate, re-allege, and incorporate by reference all foregoing paragraphs.

64.    Defendant is a "debt collector" as defined by section 392.001(6) of the TFDCPA.

65.    Plaintiffs are a "consumer" as defined by section 392.001(1) of the TFDCPA.

66. Defendant violated the TFDCPA. Defendant's violations include violations of sections 392.101, 392.303, and 392.304 as evidenced by the following conduct:

a. Defendant does not have an adequate surety bond required by Texas Finance Code §392.101

b. **Falsely representing the amount, character, or legal status of the debt**. In particular, Defendant sent Class members form debt-collection demand letters that did not specifically identify the basis of the alleged assessment or fine. Moreover, Defendant's form letters do not separately identify the original assessment or fine from the add-on late charges, penalties and attorneys' fees. Defendant's collection letters misrepresent the legal status of the debt because Defendant did not have the legal right to collect any debts in Texas because they did not have an adequate surety bond required by Texas Finance Code §392.101;

c. **Collection of an amount from the consumer that is not authorized by agreement or permitted by law**. Under the TRPOPA, HOAs are permitted to charge only "reasonable" administrative fees and interest for payment plans. Defendant charged Class members unreasonable and usurious fees for administering payment plans. Moreover, Defendant collected unlawful liquidated damages or illegal penalties from Class members that were grossly in excess of the amount of the original assessment or fine. Defendant's

collection of debts from Plaintiffs and Class Members was not permitted by law because Defendant did not have an adequate surety bond required by Texas Finance Code §392.101.

d. **Failing to validate a disputed debt.** As previously noted, Defendant sent Class members form debt-collection demand letters that did not specifically identify the basis of the alleged assessment or fine. Moreover, Defendant's form letters do not separately identify the original assessment or fine from the add-on late charges, penalties, and attorney's fees.

e. **Otherwise using false, deceptive, misleading and unfair, or unconscionable means to collect or attempt to collect a debt from the consumer.** As previously noted, Defendant's form debt-collection letters were "false, deceptive, [and] misleading" because they did not specifically identify the basis of the alleged assessment or fine and they did not separately identify the original assessment or fine from the add-on late charges, penalties, and attorneys' fees. Defendant used unfair and unconscionable means to collect debts from class members because they charged unlawful liquidated damages and illegal penalties to Class members and charged unreasonable "administrative fees" for payment plans – all under the threat of foreclosure proceedings.

67.     Defendant's acts and/or omissions, as described above, were done with intentional and negligent disregard for Plaintiffs' rights under the law and with the purpose of coercing Plaintiffs to pay monies not lawfully owed.

68.     As a result of the above violations of the TFDCPA, Defendant is liable to Plaintiffs and the Classes in the sum of Plaintiffs' statutory damages, actual damages, and attorneys' fees and costs.

69.     Defendant Niemann & Heyer is a third-party debt collector because it has non-attorney employees who are regularly engaged to solicit debts for collection and/or regularly make contact with debtors for the purpose of collection or adjustment of debts.

## COUNT III: NEGLIGENT MISREPRESENTATION

70.     Plaintiffs hereby restate, re-allege, and incorporate by reference all foregoing paragraphs.

71.     Defendant made false representations to Plaintiffs and Class members in the course of the Defendant's business and in transactions in which the Defendant had a financial interest.

72.     Defendant sent form debt-collection letters to Plaintiffs and Class members that contained omissions of material fact that rendered the letters false and misleading. Specifically, Defendant's form letters do not identify the basis of the alleged assessment or fine, do not identify the HOA rule allegedly violated, and/or do not separately identify the amount of the initial assessment or fine from the add-on late penalties, charges and attorney's fees.

73.   Defendant supplied this false and misleading information to coerce and exploit Plaintiffs and Class members into paying unreasonable and unconscionable fees under the threat of foreclosure proceedings.

74.   Because Defendant's form debt-collection letters are false and misleading by omission, Plaintiffs' and Class members' reliance is presumed under the Supreme Court's decision in *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972).

75.   Defendant's negligent misrepresentations proximately caused Plaintiffs' and Class member's injury.

### COUNT IV: TORTIOUS INTERFERENCE WITH CONTRACT

76.   Plaintiffs hereby restate, re-allege, and incorporate by reference all foregoing paragraphs.

77.   Plaintiffs and Class members have a contractual relationship with their HOAs, which are governed by HOA rules, covenants, conditions and/or restrictions.

78.   Under the TRPOPA, HOAs are only permitted to charge "reasonable" administrative fees and interest for payment plans.

79.   Defendant has willfully and intentionally interfered with Plaintiffs' and Class members' contracts with their HOAs because it has charged and collected unreasonable fees to administer payment plans.

80.   Defendant has also willfully and intentionally interfered with Plaintiffs' and Class members' contracts with their HOAs because it has charged and collected illegal liquidated damages or unlawful penalties in the form of late penalties, fines

and other charges that are far in excess to the amount of the initial assessment or fine.

81.    Defendant's interference proximately caused Plaintiffs' and Class members' injuries.

82.    Plaintiffs and Class members have incurred actual damages and losses.

**POTENTIAL ADDITIONAL CAUSES OF ACTION**

83.    At or around the time this suit was filed, Plaintiffs served upon Defendant demands under both the Texas usury statute (Chapters 301 et seq. of the Texas Financial Code) and the Texas Deceptive Trade Practices Act (Section 17.41 et seq. of the Texas Business & Commerce Code).

84.    Defendant charges members of the putative classes unreasonable fees in exchange for forbearance of collection on a debt owed by Plaintiffs. Defendant's unreasonable fees constitute interest on that debt at a usurious rate—in Plaintiffs' case, of more than 10 times the statutory limits. In charging and accepting such excessive interest rates, Defendant has violated the Texas usury statute.

85.    If Defendant fails to cure in response to Plaintiffs' usury demand, then Plaintiffs intend amend this Complaint to add claims for usury.

86.    Further, Defendant sends HOA members, such as Plaintiffs and the putative class members, notices of violation that are so ambiguous that they fail to provide fair notice of the alleged violation, much less the opportunity to cure. Moreover, Defendant sends form collection letters to HOA members that do not identify the basis of the alleged assessment or fine, do not identify the HOA rule

allegedly violated, and/or do not separately identify the amount of the initial assessment or fine from the add-on late penalties, charges and attorney's fees. In addition, on information and belief, Defendant sent notices of violation and/or collection letters in a manner intended not to reach the HOA member in question. In so doing, Defendant has violated the Texas DTPA.

87.    If Defendant fails to cure in response to Plaintiffs' Texas DTPA demand, then Plaintiffs intend to amend this Complaint to add claims for violation of the Texas DTPA.

## JURY DEMAND

88.    Plaintiffs demand a trial by jury of all issues of fact in this case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Michael A. Gomez and Nora A. Gomez respectfully request that the Court grants the following:

a.   An order be entered certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiffs and her counsel to represent the Classes;

b.   An order be entered declaring that Defendant's actions, as described above, are in violation of the FDCPA, TFDCPA, and the common law;

c.   An order be entered directing Defendant to dispense with its unlawful and unreasonable fees for setting up a payment plan;

d.   All such unreasonable fees collected by Defendant be disgorged by Court order;

e. Judgment be entered against Defendant for statutory damages under FDCPA and TFDCPA;

f. Judgment be entered against Defendant for actual, compensatory, and/or restitution damages;

g. Judgment be entered against Defendant for punitive damages under the common law.

h. An order be entered enjoining Defendant Niemann & Heyer from collecting debts owed to another in Texas until such time that Defendant Niemann & Heyer obtain a surety bond and file a copy of the bond with the Office of the Texas Secretary of State as required by Section 392.101 of the Texas Finance Code;

i. Award costs and reasonable attorneys' fees under the FDCPA and TFDCPA; and

j. Grant such other and further relief as may be just and proper.

Dated: February 5, 2016              Respectfully submitted,

**HOHMANN, BROPHY & SHELTON, PLLC**

*/s/ Jesse Z. Weiss*
Ryan Shelton
Texas Bar No. 24037484
Jesse Z. Weiss
Texas Bar No. 24013728
210 Barton Springs Road, Suite 250
Austin, Texas 78704
Telephone:  (512) 596-3622
Facsimile:  (512) 532-6637

***Counsel for Plaintiffs***
***Michel A. Gomez and Nora A. Gomez***

27