IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MICHAEL A. GOMEZ and | § | |
| NORA A. GOMEZ, on behalf of | § | |
| themselves and all others | § | |
| similarly situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 1:16-CV-119 RP |
| | § | |
| NIEMANN & HEYER, L.L.P., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court are Defendant's Motion to Dismiss and the responsive filings thereto. Having considered the parties' submissions, the record in this case, and the applicable law, the Court issues the following order.

## I. BACKGROUND

Plaintiffs Michael A. Gomez and Nora A. Gomez bring this action against Defendant, Niemann & Heyer L.L.P. ("Niemann & Heyer"), alleging that Defendant has committed a host of violations of federal and state law in their operations as a debt collector.

Plaintiffs Michael A. Gomez and Nora A. Gomez have, since at least 2012, resided in a Pflugerville, Texas subdivision governed by a Homeowners' Association ("HOA") called the Brookfield Owners Association, Inc. ("Brookfield HOA"). The Brookfield HOA collects assessments of $84 per quarter from the Gomezes, due every January 1, April 1, July 1, and October 1. (Dkt. 1, ¶ 38 n.3). In addition, the Brookfield HOA retains the power to levy fines and fees for violations of its bylaws (*See* Dkt. 1, ¶¶ 31–33).

When a resident fails to pay allegedly owed assessments, fines, or fees, the Brookfield HOA sometimes hires Niemann & Heyer, in a representative capacity, to pursue the collection of that debt. For example, in 2012, the Brookfield HOA hired Niemann & Heyer to collect debts from the Gomezes based on an initial $25 fine for having a portable basketball goal in their driveway. (Dkt. 1, ¶ 31). By early 2013, the $25 fine had turned into over $2500 owed, including late penalties and attorney's fees. (Dkt. 1, ¶ 32). Niemann & Heyer also filed a foreclosure action against Plaintiffs in 2013, but this was later dismissed. (Dkt. 1, ¶ 32 n.2).

Several years later, on August 25, 2015, Niemann & Heyer sent the Gomezes a letter, again on behalf of the Brookfield HOA, demanding that they pay "$325.26 to bring [their] account current through August 15, 2015." (Dkt. 1, ¶ 38; Dkt. 3 Ex. 1). The letter stated that the amount included "certain assessments and other sums owed to the [Brookfield HOA]" as well as "any attorney's fees incurred to date." (Dkt. 1, ¶ 38; Dkt. 3 Ex. 1). It further informed the Gomezes that they had thirty days to pay the amount owed, and that failure to pay might result in the Brookfield HOA "exercising its lien rights against [their property], which may include filing a Notice of Lien . . . filing a lawsuit against [them] . . . and/or foreclosing its lien and selling [the] Property at public action, to the fullest extent that such actions are allowed by law." (Dkt. 3 Ex. 1). The letter also expressed that should such legal action become necessary, the Brookfield HOA would seek full reimbursement of any attorney's fees, including, in the event of a lawsuit, a "minimum charge of $2,500, with the possibility that the final amount [would] be much higher." (Dkt. 3 Ex. 1). Lastly, the letter informed the Gomezes that while their debt remained outstanding, "late fees, collection fees, interest charges, or other expenses related to [their] delinquency . . . [would] continue to accrue." (Dkt. 3 Ex. 1).

The Gomezes contacted Niemann & Heyer before thirty days had passed and requested a payment plan. In response, on September 18, 2015, Niemann & Heyer sent the Gomezes a letter containing a proposed payment plan. The letter provided that:

Per your request, enclosed is a Payment Plan that will allow you to satisfy your current debt to the Association without additional collection efforts being taken against you. This Payment Plan is for a term of 8 months and provides for a total amount due of $782.44. This amount includes $200 in fees for administering the Payment Plan.

(Dkt. 1, ¶ 40; Dkt. 3 Ex. 2.)

The letter also included a table listing certain charges, reproduced below:

| | |
|---|---|
| (a) Current Charges (as of August 15, 2015): | $414.44 |
| (b) Interest on Current Charges: | $0.00 |
| (c) Anticipated future assessments and other charges during life of Payment Plan | $168.00 |
| (d) Payment Plan Administration Fee: | $200.00 |
| TOTAL DUE UNDER PLAN: | $782.44 |

(Dkt. 3 Ex 2.)

Plaintiffs subsequently paid some amount of the total debt, including the payment plan administration fee, *e.g.*, (Dkt. 1, ¶¶ 37, 60, 73), and now bring this action against Defendant. [1]

First, Plaintiffs claim that Defendant's conduct in sending these letters and collecting the alleged debt violated §§ 1692e, 1692e(2)(A), 1692e(8), 1692e(10), 1692f(1), 1692f(6)(A), and 1692g of the Fair Debt Collection Practices Act ("FDCPA"). (Dkt. 1, ¶ 60). Plaintiffs also contend that Defendant violated §§ 392.01, 392.303, and 392.304 of the Texas Fair Debt Collection Practices Act ("TDCA"). (Dkt. 1, ¶ 66). Lastly, Plaintiffs assert that Defendant committed the common law torts of negligent misrepresentation, (Dkt. 1, ¶¶ 70–75), and tortious interference with contract, (Dkt. 1, ¶¶ 76–82).

---

[1] Plaintiffs do not affirmatively allege that they have paid anything to Defendant. However, the Complaint makes numerous references to Defendant's collection of various fees and fines allegedly included in the total owed, including Defendant's collection of the payment plan administration fee. The Court is therefore justified in inferring that Plaintiffs have paid at least some amount of the debt allegedly owed as required for a number of the claims discussed in this order.

## II. APPLICABLE LAW

### 1. Standard of Review, Federal Rule of Civil Procedure 12(b)(6)

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6)[2] the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Throughout this process, the court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference,

---

[2] The parties in this case disagree as to whether Defendant's motion to dismiss falls within the ambit of Rule 12(b)(6), which generally governs pre-answer motions, or Rule 12(c), which governs a judgment on the pleadings. At this stage the Court need not resolve this issue because the standard for dismissal under each rule is identical. *Lashley v. Pfizer, Inc.*, 750 F.3d 470, 473 (5th Cir. 2014).

and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

### 2. The FDCPA

The FDCPA was enacted in part to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Toward that goal, § 1692e of the FDCPA prohibits generally a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." The section then provides a non-exhaustive list of examples of such conduct, including (1) the false representation of "the character, amount, or legal status of any debt," (2) "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed," and (3) "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(2)(A); 15 U.S.C. § 1692e(8); 15 U.S.C. § 1692e(10).

Section 1692f is structured similarly, and prohibits generally a debt collector from employing "unfair or unconscionable means to collect or attempt to collect any debt." Examples of this conduct include, but are not limited to, (1) "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law," and (2) "threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(1); 15 U.S.C. § 1692f(6)(A).

Lastly, § 1692g(a) requires that a debt collector, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt," send a written notice apprising the consumer of the amount of the debt owed, the name of the creditor to whom

the debt is owed, and the consumer's statutory rights to dispute the debt or request additional information. Section 1692g(b) in turn dictates the procedure a debt collector must follow if a consumer chooses to exercise any of those rights. Of these provisions, the one seemingly most pertinent to the claims and facts put forward by Plaintiffs is the requirement under 15 U.S.C. § 1692g(a)(1) that a debt collector include "the amount of the debt" in a debt collection letter.

### 3. FDCPA Definitions and Standards

#### A. The Least Sophisticated or Unsophisticated Consumer

When deciding whether a debt collection letter violates § 1692e or § 1692f, the Court must view the correspondence from the perspective of an "unsophisticated or least sophisticated consumer."[3] *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004) (internal quotation marks omitted). The unsophisticated consumer is neither "shrewd nor experienced in dealing with creditors." *Id.* This does not mean that she is "tied to the very last rung on the [intelligence or] sophistication ladder." *Id.* (internal quotation marks omitted) (alteration in original). She is "not illiterate[,] and can be expected to read the entire collection with some care." *Osborn v. Ekpsz, L.L.C.*, 821 F. Supp. 2d 859, 867 (S.D. Tex. 2001) (citing *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005)). As a result, debt collection letters must be considered as a whole when determining if they violate the FDCPA. *See Gonzalez v. Kay*, 577 F.3d 600, 607 (5th Cir. 2009); *Peter v. GC Servs. L.P.,* 310 F.3d 344, 349 (5th Cir. 2002).

---

[3] The Fifth Circuit has not yet been forced to choose between distinguishing the unsophisticated consumer from the least sophisticated consumer, as each case it has decided involving the issue would have had the same outcome under either standard. *E.g., Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997) (explaining that the least sophisticated and unsophisticated consumer standards "serve the same purposes and apparently would lead to the same results in most cases, except that [the unsophisticated consumer standard] is designed to protect consumers of below average sophistication or intelligence without having the standard tied to 'the very last rung on the sophistication ladder'" and declining to choose between the standards because it made no difference to the case's outcome (quoting *Gammon v. GC Services Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994))); *McMurray v. ProCollect, Inc.,* 687 F.3d 665, 669 (5th Cir. 2012) (reaffirming the difference between the two standards enunciated in *Taylor*, but refusing to choose one over the other because doing so was unnecessary to the disposition of the case).

In the Fifth Circuit, whether an unsophisticated consumer would perceive a letter as deceptive, misleading, or unfair is generally a question of fact. *Carter v. First Nat. Collection Bureau, Inc.* 135 F. Supp. 3d 565, 569 (S.D. Tex. 2015) (citing *Gonzalez*, 577 F.3d at 605–06); *Langley v. Weinstein & Riley, P.S.*, No. H-12-1562, 2013 WL 2951057, at *3 (S.D. Tex. June 14, 2013). Only when "reasonable minds" cannot differ as to whether a letter would be deceptive, misleading, or unfair to the unsophisticated consumer may the court enter a decision as a matter of law. *See Gonzalez*, 577 F.3d at 606–07.

Application of the unsophisticated consumer test is objective, meaning that it is unimportant whether the individual who actually received an allegedly violative letter was misled or deceived. *See Taylor*, 103 F.3d at 1236; *Gonzalez*, 577 F.3d at 609–11 (Jolly, J., dissenting) (explaining the unsophisticated consumer standard under Fifth Circuit precedent while disagreeing with the majority's decision to allow the jury to apply the standard). This approach is intended to "protect[] all consumers, including the inexperienced, the untrained[,] and the credulous, from deceptive debt collection practices" and to "protect[] debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials." *Taylor*, 103 F.3d at 1236 (citing *Clomon v. Jackson*, 988 F.2d 1314, 1318–19 (2d Cir. 1993)).

### B. False, Deceptive, or Misleading Under FDCPA § 1692e

The Fifth Circuit does not appear to have explicitly given definition to what it means for a debt collection letter to be false, deceptive, or misleading under the FDCPA. A review of circuit court decisions nationwide supports the conclusion that "false," "deceptive," and "misleading" function substantially identically, especially since the advent of the "materiality" standard. This conclusion, as well as the foundation for the materiality standard, is illustrated in *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009), wherein the Seventh Circuit made it clear that the state of mind of a reasonable, unsophisticated debtor is "*always* relevant" to conduct prohibited

by § 1692e. The Court therefore held that even when a debt collector's communication is objectively false in a "hypertechnical" sense, they have not violated the FDCPA unless the statement could have actually misled an unsophisticated consumer. *Id.* at 645–46.

The Seventh Circuit later clarified its conclusion in *Wahl*, explaining in *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 759 (7th Cir. 2009), that materiality should be a requirement for any action based on § 1692e. A false, deceptive, or misleading statement is "material" when it has "the ability to influence a consumer's decision."[4] *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 942 (7th Cir. 2011). The requirement of materiality advances the purpose of the FDCPA, which is to "provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective . . . nor undermines it . . . ." *Hahn*, 557 F.3d at 757–58; *accord Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3rd Cir. 2015) ("[T]he FDCPA was designed to give debtors reliable information so that they can make informed decisions about how to address debts.").[5]

Since *Hahn*, the Third, Fourth, Sixth, and Ninth Circuits have addressed and adopted the same approach as the Seventh Circuit. *E.g.*, *Jensen*, 791 F.3d at 421; *Powell v. Palisades Acquisition XCI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033–34 (9th Cir. 2010). These courts have all in one way or another characterized the materiality standard as implicit in the least or unsophisticated

---

[4] An example of a false statement that is immaterial may be found in the facts of *Hahn*. 557 F.3d at 756. The plaintiff's credit card debt was bought from the original creditor by a third party. *Id.* The third party sent the plaintiff a debt collection letter labeling the total due at the time of its purchase of the debt as the "amount due" and the interest accrued after the time of purchase as "interest due." *Id.* The plaintiff argued that because the "amount due" included older accrued interest, while the "interest due" was only that which had accrued since the purchase of the debt, the communication was false. *Id.* The Seventh Circuit found this immaterial; "[a literal falsehood regarding] the difference between principal and interest is no more important to the [FDCPA] than [a falsehood regarding] the color of the paper that [the letter was printed on]" because "a dollar due is a dollar due." *Id.* at 757. In other words, when knowledge of the basis for each component of the debt cannot affect the unsophisticated consumer's approach to dealing with it, a statement that might otherwise mislead or be literally false is immaterial.

[5] Note that under this framework, the specific violations enumerated in § 1692e(1)–(16) necessarily meet the materiality standard because they are merely examples of the generally prohibited conduct under § 1692e.

debtor standard, and thus in no way a deviation from prior practices. *E.g.*, *Jensen*, 791 F.3d at 421 ("[T]he materiality requirement is simply another way of phrasing the legal standard we already employ when analyzing claims under § 1692e, so that the same analysis can be applied to communications containing false statements."); *Donohue*, 592 F.3d at 1033 (characterizing materiality as merely a corollary to the least sophisticated debtor standard).

The end result—that only those false statements which could actually mislead might be violations of § 1692e—means that there is significant, if not coextensive, overlap between "false" and "misleading" representations under the FDCPA.

Similarly, "deceptive" and "misleading" appear to share the same meaning in the case law. The Second Circuit's definition of what makes a debt collection letter deceptive—"when it can be reasonably read to have two or more different meanings, one of which is inaccurate," *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2nd Cir. 1996)—is widely accepted. *E.g.*, *Rosenau v. Unifund Corp.*, 539 F.3d 218, 222 (3rd Cir. 2008); *Gonzales v. Arrow Fin. Servs. LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011); *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 441 (6th Cir. 2008); *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (7th Cir. 2006). Courts have in turn applied this definition, without distinction, to determine whether a letter is "misleading" or "deceptive." For example, in *Gonzales*, the Ninth Circuit first defined what makes a letter "deceptive" and then applied that definition to conclude that a debt collection letter was "misleading." *Gonzales*, 660 F.3d at 1062–63; *accord Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299–302 (3rd Cir. 2008) (defining "deceptive" as above but using "deceptive" and "misleading" interchangeably). Reflecting the similarity in the standards, Judge Frank Easterbrook of the Seventh Circuit has defined the test for whether a letter is "misleading" as simply "whether a misleading implication arises from an objectively reasonable [unsophisticated consumer's] reading of the communication." *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1259 (7th Cir. 1994) (Easterbrook, J., concurring).

Lastly, it should be noted that numerous courts state that debt collection letters that "confuse" the unsophisticated consumer are prohibited by § 1692e. *E.g.*, *Wahl*, 556 F.3d at 646; *Gonzales*, 660 F.3d at 1062; *Jensen*, 791 F.3d at 419. This seems to simply be an extension of the underlying principle behind prohibiting false, deceptive, or misleading debt collection communications under the FDCPA, and its policy of facilitating informed, intelligent decision-making by consumers.

The Fifth Circuit has never explicitly endorsed the above language regarding false, deceptive, misleading, or confusing debt collection letters. However, its cases involving FDCPA § 1692e claims implicate the same criteria. The ultimate question in each is whether the unsophisticated or least sophisticated consumer would have been led by the debt collection letter into believing something untrue that would have influenced their decision-making. *See, e.g.*, *Gonzalez*, 577 F.3d at 604 (the reason the FDCPA prohibits false or deceptive representations that an attorney has become involved in the debt collection process is because that knowledge is likely "to intimidate most consumers"); *Goswami*, 377 F.3d at 495 (debt collection letter was deceptive because it conveyed false information about repayment options in an attempt to push consumers to make a rapid repayment without full knowledge of the available options). Indeed, some form of the standard appears to be taken for granted.[6] *See, e.g.*, *Peter*, 310 F.3d at 350 (assessing whether certain statements in a debt collection letter were misleading under § 1692e and concluding that "the letter does not contain any real or *material* false, deceptive, misleading representation in connection with the collection of the debt within the meaning of § 1692e") (emphasis added).[7]

---

[6] This is not surprising given other circuit courts' characterization of the materiality standard as merely implicit in, or a corollary to, their already existing approach to the least or unsophisticated consumer standard.

[7] It should be noted that the overlap between the ideas of false, deceptive, and misleading is apparent in Fifth Circuit decisions; for example, in *Goswami*, the debt collection letter was deceptive based on the falsity of the information contained therein. *Goswami*, 377 F.3d at 495.

### 4. The TDCA

The conduct prohibited under the TDCA is coextensive with that prohibited under the FDCPA, at least insofar as "[t]he same actions that are unlawful under the FDCPA are also unlawful under the TDCA." *Bullock v. Abbott & Ross Credit Services, L.L.C.*, No. A–09–CV–413, 2009 WL 4598330, at *2 n.3 (W.D. Tex. Dec. 3, 2009); *accord Cox v. Hilco Receivables, L.L.C.*, 725 F. Supp. 2d 659, 666–67 (N.D. Tex. 2010) ("The FDCPA and the TDCA are very similar."); *Prophet v. Myers*, 645 F. Supp. 2d 614, 617 (S.D. Tex. 2008) (comparing the FDCPA's prohibition of false representations or deceptive means to collect debt with TDCA § 392.304's prohibition on the use of false representations or deceptive means to collect a debt and finding that "the conduct made unlawful by [the TDCA] is virtually identical to the conduct made unlawful by the FDCPA"); *Langley v. Weinstein & Riley, P.S.*, No. H–12–1562, 2013 WL 2951057, at *9 (S.D. Tex. June 14, 2013) (citing *Bullock*, *Cox*, and *Prophet* for the proposition that the FDCPA and TDCA are very similar).

### III. ANALYSIS

### 1. Defendant's Stated Grounds for Dismissing Plaintiffs' FDCPA Claims

#### A. Failure to Itemize Debt is not Actionable under the FDCPA

Defendant claims that a debt collector's failure to itemize the debt in a debt collection letter is not legally cognizable as a violation of the FDCPA, and that any of Plaintiffs' claims based on a failure to itemize should be dismissed. (Dkt. 10 at 6). They cite to a host of cases in support of the proposition that the FDCPA "does not require itemization of the debt in every communication, but rather a clear and accurate statement of the total due." (*Id.*) (quoting *Goodrick v. Cavalry Portfolio Servs. LLC*, No. CIV 12–1822 PHX, 2013 WL 4419321, at *4 (D. Ariz. Aug. 19, 2013)).[8]

---

[8] Defendant also string cites the following decisions as supportive of their argument: *Haney v. Portfolio Recovery Assocs., L.L.C.*, No. 4:14CV0720, 2015 WL 1457216 (E.D. Mo. Mar. 30, 2015), *Mullen v. Compton*, No. 2:11–cv–01159, 2013 WL 3367080 (S.D. Ohio July 5, 2013), *Nowakowski v. Gross*, 2012 WL 4086779 (E.D.N.Y. Sept. 17, 2012), *Moritz v. Daniel N. Gordon, P.C.*, 895 F. Supp. 2d 1097 (W.D. Wash. 2012), *Michalek v. ARS Nat'l Sys., Inc.*, No. 3:11–CV–1374, 2011 WL 6180498 (M.D. Pa. Dec. 13, 2011).

Defendant reads this statement from *Goodrick* to mean that the FDCPA does not require itemization in *any* debt collection communication. But there is a difference between "any" and "every." If one is not required to take some action "every" time some triggering event occurs, that does not mean that they are *never* required to take that action; it merely means they are not *always* required to take that action. The *Goodrick* court's statement is more properly read to mean that a "clear and accurate statement of the total due" is required in *every* debt collection letter, but an itemization of the debt is only required in *some* debt collection letters. This makes eminent sense given that the FDCPA was designed to ensure that debt collectors fully and fairly convey information so that debtors can make intelligent choices in addressing their debt.

*Goodrick* involved a plaintiff-debtor who received two unitemized debt collection letters from a third party buyer that had recently purchased the plaintiff's nine-years-outstanding debt. *Goodrick*, 2013 WL 4419321, at *1–2. The first letter stated only the plaintiff's outstanding balance, without communicating that interest would accrue and without dictating what portion of the debt was principal and what portion was interest and other fees. *Id.* at *1. The second letter reflected the addition of accrued interest and fees to the outstanding balance. *Id.* The plaintiff's sole claim was that the debt collector, by failing to state in the first letter that interest and fees would accrue on the outstanding balance, had violated the FDPCA. *Id.* at *1, *4.

First, the *Goodrick* court found that an unsophisticated debtor in the plaintiff's shoes—one who had for nine years been aware of the original loan and the fact that interest was accruing on it—would simply not be confused by a letter that failed to inform him that interest would continue to accrue. *Id.* at *2. Nothing about the loan had changed except who was administering it; the terms were the same, the interest rate was the same, and the outstanding balance at the time of assignment was the same. *Id.*

The court then proceeded to entertain a separate issue which the plaintiff had inadvertently brought up in his argument: that the debt collector's failure to distinguish the principal from the interest and fees would have misled an unsophisticated consumer. *See id.* at *4. The court decided that even if such a lack of specificity was technically misleading, it was not materially misleading. *See id.* To support its decision, the *Goodrick* court cited *Donohue v. Quick Collect Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010), which involved the defendant's mislabeling as "interest" what was actually the aggregate of financial charges and interest accrued. The total debt was otherwise accurate. *Id.* The *Donohue* court found that the plaintiff's ability to intelligently choose her response had not been influenced because her only options, irrespective of the falsehood, were to pay the total debt or attempt to challenge the accuracy of the debt, "futile as that may have been." *Donohue*, 592 F.3d at 1034. The Ninth Circuit could "conceive of no action [the plaintiff] could have taken that was not already available to her on the basis of the information in [the communication]." This same rationale was applied by the *Goodrick* court to dispose of the plaintiff's § 1692e claim. *Goodrick*, 2013 WL 4419321, at *4.

So when a debt collection letter states a debtor's total debt, the accuracy of that total is undisputed, the origin of the debt is known, no allegations are made as to the propriety of any of the fees or interest accrued, and what category of debt each dollar falls into (fees, interest, principal, etc.) is irrelevant because the known interest rate applies to the total uniformly—that is when failure to itemize the debt is immaterial. In that scenario, "a dollar due is a dollar due," *Hahn*, 557 F.3d at 757, and the ability of the consumer to make intelligent choices moving forward is not hampered because there are so few choices to be had.[9]

But that is not what Plaintiffs allege in the instant case. The facts here are more similar to those in *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004), wherein the Seventh Circuit

---

[9] It should also be noted that both *Goodrick* and *Donohue* involved motions for summary judgment. Here, Plaintiffs' alleged facts control, and so the question of the accuracy of the total debt is not appropriate at this stage.

considered a Rule 12(b)(6) motion to dismiss a claim under § 1692e. There the plaintiff incurred $122.06 in charges at an animal hospital and signed a contract stating that she would pay the bill later and be liable for extra charges and attorney's fees should collection action become necessary. *Id.* at 563–64. She never paid the bill and later received a debt collection letter from a law firm stating that she owed $388.54. *Id.* at 563. Unbeknownst to the plaintiff, the letter reflected the original $122.06, plus interest and service charges, plus $250 in attorney's fees. *Id.* at 563–64. The letter "did not itemize the expenses or explain the amount of the debt in any way." *Id.* at 564.

The Seventh Circuit found that the plaintiff had made allegations sufficient to state a claim under § 1692e. *Id.* at 566. An unsophisticated consumer in those circumstances could reasonably wonder why her bill had increased so drastically. *Id.* By failing to itemize or explain the amount of the debt, the debt collector had "[left] the door open" for the plaintiff to logically assume that she had simply accumulated approximately an extra $270 in charges, which would give a "false impression of the character of the debt." *Id.* It is "unfair to consumers under the FDCPA to hide the true character of the debt, thereby impairing their ability to knowledgeably assess the validity of the debt." *Id.* That the plaintiff could have consulted the original contract or contacted the law firm debt collector to ask for an explanation of the debt did not matter. *Id.*; *accord Gonzales v. Arrow Fin. Servs. LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011) ("[C]onsumers are under no obligation to seek explanation of confusing or misleading language in debt collection letters." (citing *Fields*, 383 F.3d at 566)). As a result, the Seven Circuit held that "debt collectors must clearly and fairly communicate information about the amount of the debt to debtors. This includes how the total amount due was determined if the demand for payment includes add-on expenses like attorney's fees or collection costs." *Id.* at 565.

14

The Court finds the Seventh Circuit's analysis convincing.[10] While the FDCPA does not affirmatively require itemization in every instance, whether a failure to itemize is misleading or deceptive is a context-specific inquiry. The Court therefore denies Defendant's motion to dismiss Plaintiffs' claims based on the theory that a failure to itemize is legally uncognizable under the FDCPA.

### B. Plaintiffs Have Otherwise Failed to Plead Sufficient Facts to State a Plausible Claim that Defendant Materially Violated the FDCPA

Defendant has structured their Motion to Dismiss so that this ground for dismissal comes last, (Dkt. 10 at 12), presumably in the hope that the sequence in which the Court analyzes the issues will mirror their own. Despite the ambitious nature of Defendant's appeal—that the Court recognize that Plaintiffs have failed to sufficiently plead *any* FDCPA claim that Defendant has not until this point in the Motion specifically addressed—what Defendant has actually written focuses entirely on whether the second, payment-plan letter materially misstated the debt and whether it would have materially misled an unsophisticated consumer. (*Id.* at 12–14). The Court therefore treats Defendant's requested ground for dismissal as Plaintiffs' having failed to allege sufficient facts to establish a material violation of FDCPA § 1692e's prohibition on making false or misleading representations in connection with the collection of any debt. This is in keeping with the fact that

---

[10] A number of district courts outside of the Seventh Circuit have similarly endorsed the reasoning in *Fields. E.g.*, *Richard v. Oak Tree Grp., Inc.*, 614 F. Supp. 2d 814, 821–22 (W.D. Mich. 2008) (applying *Fields* to find that an unsophisticated consumer would have been misled by the defendant's addition, without explanation, of collection costs and interest to the "balance due" that the plaintiffs knew they owed); *Dowdy v. Solutia Healthcare TAS, Inc.*, No. 1:05-0090, 2006 WL 3545047, at *8–9 (M.D. Tenn. Dec. 8, 2006) (applying *Fields* to determine that a debt collector's letter, which labeled as "principal balance" the actual principal balance lumped together with collection costs, violated § 1692e); *Grubb v. Green Tree Servicing, LLC*, No. 13–07421, 2014 WL 3696126, at *9–11, (D.N.J. July 24, 2014) (applying *Fields* to decide that a debt collection letter stating the total debt owed but providing "no further information regarding how the amount of debt was calculated" would be misleading to the least sophisticated consumer); *Duraney v. Washington Mut. Bank. F.A.*, No. 2:07cv13, 2008 WL 4204821, at *17 (W.D. Pa. Sept. 11, 2008) (applying *Fields* to find that by itemizing the charges comprising the total debt, the defendant had not misled the plaintiff).

the decisions that Defendant cites as persuasive authority all involve the analysis of FDCPA § 1692e claims. (*Id.* at 13–14).[11]

First, Defendant allegedly sent Plaintiffs two debt collection letters. In both, Defendant listed Plaintiffs' balance due as of August 15, 2015, for a variety of unspecified fees, assessments, and attorney's fees.[12] Neither letter detailed the basis for the original fine or assessment on which penalties may or may not have been charged, how much of the total was attorney's fees, or what additional add-on charges or fees were included. It is reasonable to infer that under the facts as presented, an unsophisticated consumer in Plaintiffs' position would be "impair[ed] in their ability to knowledgeably assess the validity of the debt," *Fields*, 383 F.3d at 566, and so would be misled by both the debt letters. Reasonable minds can differ as to whether an unsophisticated consumer would be able to make an intelligent, informed choice about their next step forward when the debt collector has concealed from them the individual components of their overall debt, the basis for which has also been withheld.[13] The Court thus denies Defendant's motion to dismiss any claims based on the argument that the facts as alleged do not support a plausible claim that either letter would have misled an unsophisticated consumer in Plaintiffs' position.[14]

---

[11] Plaintiffs respond that there is no Fifth Circuit case requiring that a violation must be "material," and that Defendant has not contended in their motion that any of Plaintiffs' allegations are immaterial, thereby conceding the point. (Dkt. 19 at 5 n.3). This Court need not address what standard to apply because even under the higher "materiality" standard, it is inappropriate to dismiss the challenged § 1692e claims at this stage.

[12] The first letter characterized the total debt as of August 15, 2015, as composed of "certain assessments and other sums" as well as "attorney's fees incurred to date." (Dkt. 3 Ex. 1). The second letter characterized the total debt due as of August 15, 2015, as simply "current charges." (Dkt. 3 Ex. 2).

[13] Defendant implies that the first letter was accurate as to the debt that Plaintiffs owed. Even if the Court were to inappropriately credit Defendant's factual allegations, whether a debt is legally collectible, or accurately stated, is not dispositive to the question of whether the way in which it is communicated is misleading. "A literally true statement can still be misleading." *E.g.*, *Gonzales v. Arrow Financial Services, LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011); *accord Brown v. Card Service Center*, 464 F.3d 450, 454–56 (3d Cir. 2006) (when debt collector stated truthfully that it *could* take certain actions, but in reality did not intend to and had almost never done so in the past, a jury could find that the statement was misleading); *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996) (literally true language regarding what may or may not happen and when or if certain conditions apply may still be confusing even if not false).

[14] According to the Complaint, Defendant was also involved in collecting payments from Plaintiffs in 2012 and 2013, culminating in a foreclosure action which was later dismissed. (Dkt. 1, ¶ 32 n.2).

Second, Defendant concedes that the second, payment-plan letter's statement of the total

owed as of August 15, 2015 was technically false.[15] (Dkt. 10 at 13). Defendant explains that they

mistakenly added an additional quarterly assessment and a late fee to the $325.56 in the first letter to

obtain the $414.44 in the second letter.[16] (Dkt. 10 at 13). This kind of falsehood, Defendant

maintains, "is not the sort of technicality that the FDCPA was enacted to address." (*Id.*) (quoting

*Souders v. Bank of Am.*, No. 1:12–CV–1074, 2013 WL 5937324, at *7 (M.D. Pa. Nov. 4, 2013)).

This argument is unconvincing and the case cited in support appears to be inapposite to the

issue at hand. *Souders* involved a letter sent to the debtor-plaintiff to inform her that her loan servicer

had changed from one party to another. *Souders*, 2013 WL 5937324, at *7. In the fine print of that

letter, the new loan servicer incorrectly identified the creditor of the plaintiff's loan (the creditor

listed was the third party to which the original creditor later assigned the plaintiff's debt, but at the

time that the letter was sent, that assignation had not yet occurred). *Id.* The *Souders* court first found

that the provisions of the FDCPA did not apply to the letter because the letter had not been sent in

order to collect the debt. *Id.* The court then opined that even had the letter been sent for that

purpose, the immaterial falsehood it contained was not the "sort of technicality that the FDCPA was

enacted to address." *Id.*

The technical, immaterial falsehood in *Souders* is not analogous to Defendant's purported

falsehood. The payment-plan letter, without explanation, increased the balance due as of August 15,

2015, in contradiction of the first letter. A jury could find that an unsophisticated consumer, faced

with this conflicting report of the amount allegedly owed, would be influenced in her future choices

about how to address that alleged debt. Plaintiffs have therefore alleged facts that plausibly support a

---

[15] Whether the second letter's statement of the amount owed was false depends on whether the statement of the amount owed in the first letter was accurate. On the facts alleged, the Court cannot say whether either amount due was false. For these purposes the answer does not matter, because asking whether a statement is materially false under the FDCPA is the same as asking whether it is materially misleading; a false statement is prohibited only when it misleads.

[16] Defendant seems perfectly willing to disclose the nature of their mistake in falsely reporting the total debt due by August 15, 2015, but provide no explanation of the origins or constituent parts of the original total debt reported in the first letter.

claim that an unsophisticated consumer would have found the representation in the payment-plan letter to be misleading in violation of the FDCPA.

As a result, the Court denies Defendant's motion to dismiss any of Plaintiffs' claims based on a violation of FDCA § 1692e's prohibition on the use of false or misleading representations in the collection of debt.[17]

### C. HOA Fines Do Not Constitute "Debt" Under the FDCPA

The parties disagree over the importance of distinguishing between HOA "fines," "fees," and "assessments." Defendant argues that because HOA fines are not "debts" as defined at FDCPA § 1692a(5) and required for an action under the statute, any claim involving sums owed to Brookfield HOA for fines is not legally cognizable. (Dkt. 10 at 5–6). Plaintiffs allege the opposite: fines, fees, and assessments are substantively the same, and fines are "debts" under the FDCPA. (Dkt. 19 at 5–8).

What the parties do agree upon is that "assessments" qualify as "debts" under the FDCPA. (Dkt. 19 at 5–8); (Dkt. 10 at 5–6). However, it is not entirely clear what each party means by that term.[18] Plaintiffs, in keeping with their understanding articulated above, refer to both Plaintiffs' regular quarterly payments and a $50 fine for failure to mow the lawn as "assessments." (Dkt. 1, ¶ 38 n.3; ¶ 33). The TRPOPA, to which Plaintiffs refer, defines an "assessment" as "a regular assessment, special assessment, or other amount a property owner is required to pay a property owners' association under the dedicatory instrument or by law." Tex. Prop. Code Ann. § 209.002(1). And Defendant seems to characterize "assessments" as encompassing only the regular quarterly

---

[17] Defendant has also devoted a paragraph of this section of their Motion to Dismiss to explaining that the "purpose" of the payment-plan letter was to inform Plaintiffs how much it would cost to "pay what they owed under the payment plan." (Dkt. 10 at 13–14). Defendant's purpose in sending the letter is immaterial to the discussion unless Defendant is attempting to insinuate that the payment-plan letter was not a representation made "in connection with the collection of any debt," FDCPA § 1922e. Because Defendant does not argue this, the Court will not read it into their Motion.

[18] The same can be said for the parties' use of non-assessment terminology. The Complaint, Motion to Dismiss, and responsive filings all use the terms "penalties," "charges," "fees," and "fines" interchangeably. The Court understands Defendant to be lumping all non-assessment obligations into its understanding of "fines."

payments. *See* (Dkt. 10 at 6; 12; 13). Whether one subscribes to a broad definition or not, it is apparent that at a minimum, the parties would agree that the term "assessments" as it is used in the Complaint includes ongoing, regular payments agreed to in the restrictive covenants agreed to at the time of the homeowner's purchase. The Court will use that definition in addressing Defendant's argument.

Although the Fifth Circuit has not directly addressed HOA-issued obligations, it would likely find that assessments fit comfortably within the court's expansive definition of "debt" under the FDCPA. *See Hamilton v. United Healthcare of La.*, 310 F.3d 385, 391–92 (5th Cir. 2002) (explaining that the definition of debt under the FDCPA includes "any obligation to pay" which "ha[s] its origin in," or is "incident to, or [has a] connection with" any of "many different types of business dealing between parties . . . [which] does not connote any specific form of payment" and which must be primarily for personal, family, or household purposes). This conclusion is bolstered by the decisions of other circuit courts which have directly addressed the issue. *E.g.*, *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477, 481–82 (7th Cir. 1997) (obligation to pay regular assessments, when included in a HOA's Declaration of Covenants, Conditions, and Restrictions at the time of home-purchase, constitutes "debt" under the FDCPA); *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 698 F.3d 290, 293–94 (6th Cir. 2012) (adopting the Seventh Circuit's reasoning in *Newman* as applied to regular condominium association assessments).

The Court therefore finds that an assessment constitutes "debt" under the FDCPA. Both parties agree that the total amount allegedly owed included unpaid assessments, albeit unspecified and unknown assessments. (Dkt. 10 at 6; 12–13); (Dkt. 1, ¶ 38); (Dkt. 3 Ex. 1) (stating the subject of the letter as a "Legal Demand to Pay Assessments and Other Sums Due"). The total alleged obligation thus includes at the least some amount of "debt" as defined in the FDCPA. Under these facts, and drawing all reasonable inferences in favor of Plaintiffs, it is plausible that upon receiving

Defendant's debt collection letters, an unsophisticated consumer could have been misled or confused as to what they owed in assessments. This could be true regardless of whether the 'remainder' of the total obligation was or was not covered by the FDCPA, and could affect an unsophisticated consumer's ability to make intelligent, knowledgeable choices moving forward.

As a result, the Court need not determine if fines constitute "debt" under the FDCPA. As explained above, and for the same reasons that the Court declines to dismiss Plaintiffs' claims that the two letters were misleading or false representations under FDCPA § 1692e, Analysis §§ A–B *supra*, the Court denies Defendant's motion to dismiss any of Plaintiffs' claims involving sums which total includes fines based on the contention that fines do not constitute "debt" for purposes of the FDCPA.

### D. Discussions Regarding a Payment Plan Cannot Serve as the Basis for an FDCPA Claim

Defendant claims that the second letter was merely a discussion regarding a payment plan, which is not, as a matter of law, a "representation[], or misrepresentation[], of the amount or character of the debt." (Dkt. at 13) (quoting *Fath v. BAC Home Loans*, No. 3:12–cv–1755–O, 2013 WL 3203092, at *9 (N.D. Tex. June 25, 2013)).

This is not convincing because the cases establishing the principle Defendant relies upon did not involve communications in which the defendants had made misleading or false assertions regarding the debt in question. The rule statement originated in *Watson v. Citimortgage, Inc.*, No. 4:10–cv–707, 2012 WL 381205, at *7 (E.D. Tex. Feb. 3, 2012). The plaintiffs in *Watson* alleged that the defendant had deceptively misrepresented that the plaintiffs were qualified for and guaranteed a loan modification. *Id.* However, the plaintiffs were unable to show that in doing so, the defendant had made any "false or misleading assertions regarding the character, extent, or amount of the debt." *Id.* In that context, the court found that "[d]iscussions regarding loan modification or a trial payment plan are not representations, or misrepresentations, of the amount or character of the debt." *Id.*

Similarly, in *Fath*, the defendants had merely told the plaintiffs that the plaintiffs' mortgage was under review, which did not involve any misleading or false assertion about the amount or character of the debt itself. *Fath,* 2013 WL 3203092, at \*9.

The Fifth Circuit has quoted the language from *Watson* approvingly, but only when the communication in question did not involve "affirmative statements that misrepresent the character, extent, or amount of the debt." *Massey v. EMC Mortg. Corp.*, 546 F. App'x 477, 481 (5th Cir. 2013). In *Massey*, the Fifth Circuit did not believe that the defendant's statements to the plaintiffs that (1) a loan modification should be complete in thirty days, (2) the plaintiffs were being considered for a Home Affordable Modification Program ("HAMP"), (3) the defendant required specific documents or it would cancel the plaintiff's trial payment program, or (4) the terms of a loan modification were HAMP compliant, qualified as affirmative misrepresentations of the plaintiffs' debt. *Id.*; *accord Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013) (applying the same standard to determine that the defendant's promise to send the plaintiffs a loan modification application did not misrepresent the character, extent, or amount of the plaintiffs' debt).[19]

The payment-plan letter in the instant case does not appear to be in the same category as the communications above. Defendant affirmatively stated the amount due as of August 15, 2015, in the payment-plan letter. As discussed in Analysis §§ 1(A)–1(B) *supra*, a jury could find that communication to be misleading. The Court therefore denies Defendant's motion to dismiss any of Plaintiffs' claims regarding the second letter on the basis that it was merely a discussion regarding a payment plan.

---

[19] All of the cases cited in this section of the Court's order involved the analysis of claims under the Texas Debt Collection Act, not the FDCPA. However, that statute and the FDCPA overlap substantially, as discussed in Applicable Law § 4 *supra*.

### E. Defendant's Payment Plan Administration Fee Was Not Prohibited by the Texas Residential Property Owners Protection Act

According to Plaintiffs, the $200 payment plan administration fee ("PPAF") charged and collected by Defendant via the second letter was unlawful under the Texas Residential Property Owners Protection Act ("TRPOPA"), Tex. Prop. Code. Ann. § 209, and thus in violation of at least FDCPA § 1692f(1),[20] which prohibits "the collection of any amount . . . unless such amount is . . . permitted by law." (Dkt. 1, ¶¶ 35–37, 60(b)).

The TRPOPA provides in pertinent part:

> A property owners' association composed of more than 14 lots shall adopt reasonable guidelines to establish an alternative payment schedule by which an owner may make partial payments to the property owners' association for delinquent regular or special assessments or any other amount owed to the association without accruing additional monetary penalties. For purposes of this section, monetary penalties do not include reasonable costs associated with administering the payment plan or interest.

Tex. Prop. Code. Ann. § 209.0062(a).

Plaintiffs argue that this provision of the statute, in conjunction with their assertion that Defendant's $200 PPAF was unreasonable, leads to the conclusion that the PPAF was a prohibited "monetary penalty" under the TRPOPA. As a result, Plaintiffs allege, Defendant violated the FDCPA when they collected the PPAF.

Defendant responds that any of Plaintiffs' claims based on the unreasonableness of the PPAF are defective for two reasons. The Court examines each below.

---

[20] Plaintiffs' Complaint is not always clear as to exactly which of Defendant's actions have allegedly violated which sections of the FDCPA. However, it does plainly state this particular claim—that Defendant's collection of the PPAF was in violation of FDCPA § 1692f(1). (Dkt. 1, ¶ 60(b)). Because the Court's decision as to the unreasonableness of the PPAF will apply uniformly to any other FDCPA claim predicated on this ground, the Court need not further determine which, if any, of the other sections of the FDCPA invoked by Plaintiffs may be implicated.

### i. The Statute Did Not Apply to the Payment Plan

Defendant first argues that the TRPOPA did not apply to the payment plan. They point to TRPOPA § 209.0062(c), which states that "the association is not required to make a payment plan available to an owner after the period for cure described by § 206.0064(b)(3) expires." Because Plaintiffs did not request the payment plan within this period for cure,[21] Defendant contends that their offering of the plan was not a "statutorily-mandated obligation" and it was therefore not governed by the "statutory requirements" of the TRPOPA. (Dkt. 20 at 6). To find otherwise, according to Defendant, would be to "improperly engraft onto [the statute] a provision governing plans outside the statute's purview." (*Id.*).

Analysis of this claim therefore requires the interpretation of a Texas statute. When adjudicating claims for which state law provides the rules of decision, this Court is bound to apply the law as interpreted by the state's highest court. *Barfield v. Madison Cnty., Miss.*, 212 F.3d 269, 271–72 (5th Cir. 2000). If the state's highest court has not definitively ruled on the issue in question, "it is the duty of the federal court to determine as best it can, what the highest court of the state would decide." *Id.* at 272 (quoting *Transcon. Gas v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992)). An intermediate state court of appeal's decision is binding unless this Court is "convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* at 272 (internal quotation marks omitted); *Matheny v. Glen Falls Ins. Co.*, 152 F.3d 348, 354 (5th Cir. 1998). Federal courts are not to "expand state law beyond its presently existing boundaries." *Barfield*, 212 F.3d at 272 (internal quotation marks omitted).

---

[21] It is unclear from the pleadings and filings thereto whether Plaintiffs did or did not request cure within the applicable timeframe. Plaintiffs in their Response call Defendant's allegation a "non-starter" but do not otherwise elaborate on the issue. (Dkt. 19 at 12 n.11). Defendant in their Reply maintains that Plaintiffs' refusal to squarely address the issue constitutes a concession of the facts. (Dkt. 20 at 6). This dispute of fact suggests that this claim is likely inappropriate for dismissal at the 12(b)(6) stage.

With this is mind, Defendant's argument is unpersuasive. They cite to *Iliff v. Iliff*, 339 S.W.3d 74, 80–81 (Tex. 2011), as inferentially supportive of their position. (Dkt. 20 at 6). But the Texas Supreme Court in *Iliff* merely restated long-standing principles of statutory construction under Texas law. *Iliff*, 339 S.W.3d at 80–81. A court's purpose in construing a statute is to "give effect to the Legislature's expressed intent." *Iliff*, 339 S.W.3d at 80. "Where statutory language is unambiguous and yields only one reasonable interpretation, '[a court should] interpret the statute according to its plain meaning.'" *Id.* (quoting *McIntyre v. Ramirez*, 109 S.W.3d 741, 748 (Tex. 2003)). A court should not depart from this approach unless "a contrary intent is apparent from the context or unless such a construction leads to absurd results." *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008).[22]

The purpose of the TRPOPA can be gleaned from its title—"a general concern by the Legislature to protect the rights of property owners vis-à-vis property owners' associations." *Park v. Escalera Ranch Owners' Association, Inc.*, 457 S.W.3d 571, 590 (Tex. App.—Austin 2015, no writ). This purpose is reflected in the plain meaning of the statutory language in question. Section 209.0062(a) imposes a positive duty upon property owners' associations ("POAs")—they *shall* provide reasonable payment plans to property owners for the repayment of assessments, and may not charge additional monetary penalties as part of the plan. Section 209.0062(c), by its plain language, modifies that duty in only one way: it provides scenarios in which the POA *may choose* not to offer a payment plan. A common-sense reading of these two sections together conveys that if a POA chooses to offer a payment plan—despite not being required to do so—then the provision governing the character of the payment plan still applies. To read the statute otherwise would produce "absurd results." *Rockwall*, 246 S.W.3d at 625–26. Under Defendant's approach, the entire careful scheme of

---

[22] Applying this framework to the TRPOPA can be difficult; as one of the few courts to address the statute has noted, the statute "is not a model of clarity." *Haas v. Ashford Hollow Cmty. Improvement Ass'n, Inc.*, 209 S.W.3d 875, 885 (Tex. App.—Houston [14th Dist.] 2006, no writ).

the statute's regulation of POA payment plans ceases to exist the moment the POA is no longer required by law to provide a plan. That outcome cannot have been intended by the Texas legislature and allowing it does not comport with the plain language of the statute.

The Court finds that the restrictions of § 209.0062(a) did apply to the payment plan offered by Defendant, and denies Defendant's motion to dismiss on the ground that it did not.

### ii. Plaintiffs Have Not Alleged Sufficient Facts to Support a Claim Based on the Unreasonableness of the PPAF

Defendant argues in the alternative that even if the statutory requirements did apply to their payment plan, Plaintiffs have not pled sufficient facts to establish the unreasonableness of the fee. (Dkt. 10 at 7–9). According to Defendant, the $200 PPAF they charged Plaintiffs is "patently reasonable." (*Id.* at 6–7). Plaintiffs, in contrast, allege that the $200 PPAF bears no rational relation to the cost of administering the payment plan. In support of this claim, Plaintiffs provide a list of the PPAFs that other organizations, including municipal and property owners' associations, charge, none of which exceeds $25. (Dkt. 1, ¶45).

The Court recognizes that Plaintiffs' Complaint is lean with regard to the unreasonableness of the PPAF, but it cannot be said that their allegations fail to surpass mere speculation or "'raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (U.S. 2007)). Without the opportunity to proceed to discovery, stating more specific allegations "may be nearly impossible at this stage." *Lahaye v. AstraZeneca Pharm. LP*, No. 14–00111–BAJ–SCR, 2015 WL 1935947, at *5 (M.D. La. Apr. 28, 2015); *accord Johnson v. Johnson*, 385 F.3d 503, 531 n.19 (5th Cir. 2004) ("'[I]nformation and belief' pleadings are generally deemed permissible under the Federal Rules, especially in cases in which the information is more accessible to the defendant.") (quoting 5 Wright & Miller, *Federal Practice & Procedure: Civil* § 1255 (2d ed. 1990); *Menard v. CSX Transp. Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) ("'[S]ome latitude' may be appropriate

where a plausible claim may be indicated 'based on what is known,' at least where . . . 'some of the information needed may be in the control of [the] defendants.'") (quoting *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012)); *Bausch v. Stryker Corp.*, 630 F.3d 546, 560–61 (7th Cir. 2010) ("[I]n analyzing the sufficiency of pleadings, a plaintiff's burden should be commensurate with the amount of information available to him.") (quoting *In re Medtronic, Inc., Sprint Fidelis Leads Products Liability Litigation*, 623 F.3d 2300, 1212 (8th. Cir. 2010)) (Melloy, J., dissenting); *Winslow v. W.L. Gore & Assocs., Inc.*, No. 10–00116, 2011 WL 873562, at *2 (W.D. La. Mar. 11, 2011) (recognizing that there should be some leeway in cases where "almost all of the evidence is in the possession of defendant . . . [and] it is likely impossible for plaintiff to state more specific allegations regarding [the claims] without having the benefit of discovery").

The Court therefore denies Defendant's motion to dismiss any claims predicated on Plaintiffs' failure to allege facts sufficient to allege that the PPAF was unreasonable under the TRPOPA.

### F. Defendant Was Not Operating Without a Surety Bond in Violation of Texas Law

Plaintiffs allege that Defendant Niemann & Heyer, LLP was and still is operating as a debt collector in Texas without having purchased a surety bond and filed a copy of that bond with the Office of the Texas Secretary of State, as required by Section 392.101 of the Texas Finance Code. (Dkt. 1, ¶ 21). Operating as a debt collector without this bond and filing, Plaintiffs allege, is a violation of FDCPA §§ 1692e(2)(A) (misleading the Plaintiffs as to the legal status of the debt) and 1692f(1) (collecting debt in violation of law). (*Id.*, ¶¶ 60(a), 60(b)). Plaintiffs in their Complaint concede that as of October 13, 2009, there has been a surety bond filed on behalf of "Niemann & Niemann LLP" but not one for "Niemann & Heyer, LLP." (*Id.*, ¶ 21 n.1).

In response, Defendant has attached to their Motion to Dismiss a copy of their "Certificate of Assumed Business Name," filed with the Office of the Texas Secretary of State in 2009, showing

that "Niemann & Heyer, LLP" is an assumed business name under which Niemann & Niemann

LLP does business. Defendant asks that the Court take judicial notice of this certificate and dismiss

any of Plaintiffs' claims based on the contention that Defendant had not complied with § 391.101 of

the Texas Finance Code at the time of the debt collection at issue.

The Fifth Circuit has held that taking judicial notice of "public records directly relevant to

the issue at hand" is proper in a Rule 12(b)(6) review and does not transform the motion into one

for summary judgment. *Funk v. Stryker Corp.*, 631 F.3d 777, 782–83 (5th Cir. 2011); *accord Norris v.

Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6)

motion to take judicial notice of matters of public record."). And though the Fifth Circuit has not

specifically stated that Texas Secretary of State documents are public records, it has approved

judicial notice of numerous other states' secretary of state records. *E.g.*, *Reece v. Howmet Corp.*, No.

15–109122016, WL 1612765, at *1 n.1 (5th Cir. Apr. 21, 2016) (judicially noticing the records from

the Ohio Secretary of State website); *Williams v. Homeland Ins. Co. of N.Y.*, 657 F.3d 287, 291 n.5 (5th

Cir. 2011) (characterizing the Louisiana Secretary of State's records as a "public records database");

*Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 519 (judicially noticing public records contained on

the Mississippi Secretary of State's and the Virginia State Corporation Commission's websites). In

keeping with this trend, district courts in Texas have construed the Texas Secretary of State's records

as "public records" which may be judicially noticed. *E.g.*, *Price v. Bank of New York Mellon*, No. 2:15–

CV–00097–J, 2015 WL 6549159, at *2 (N.D. Tex. Oct. 28, 2015); *Rodriguez v. Gold & Silver Buyers,

Inc.*, No. 4:12–CV–1831, 2013 WL 5372529, at *3 (S.D. Tex. Sept. 24, 2013).

The Court therefore takes judicial notice of the Texas Secretary of State records attached to

Defendant's Motion to Dismiss. (Dkt. 10 Ex. 1). The documents establish that at the time of

Defendant's allegedly unlawful conduct, Niemann & Niemann LLP was doing business using the

assumed name of "Niemann & Heyer, LLP." (*Id.*). Under Texas law, an assumed name "is a word or

27

phrase by which a person may be made known to the public, and is not a legal entity." *CA Partners v. Spears*, 274 S.W.3d 51, 69 n.11 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *accord* Tex. R. Civ. P. 28 (allowing suit against an entity under its assumed name for the enforcement of substantive rights, and permitting that its true name may be substituted upon motion); *In re Kibel*, No. 10–51397, 2011 WL 1042575, at *12 (Bankr. W.D. Tex. Mar. 16, 2011) (collecting cases regarding the legal status of an assumed name); *see also Chilkewitz v. Hyson*, 22 S.W.3d 825, 828–29 (Tex. 1999); *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003). If Plaintiffs were to bring an action to collect against the bond in question, they could sue "Niemann & Heyer, LLP," but Texas law would recognize the true defendant to be Niemann & Niemann LLP.

As a result, it appears from the record that Niemann & Niemann LLP, at the time of the alleged FDCPA violations, had purchased the required surety bond and filed a copy of it with the Office of the Texas Secretary of State as mandated by § 392.101 of the Texas Finance Code. "Niemann & Heyer, LLP" is merely an assumed name under which Niemann & Niemann, LLP does business.[23] The Court therefore grants Defendant's motion to dismiss any of Plaintiffs' FDCPA claims based on Defendant allegedly violating § 321.101 of the Texas Finance Code.

### G. Plaintiffs Have Failed to Allege Facts Supporting Actual Damages

Defendant asks the Court to dismiss the Complaint because Plaintiffs have not given the Court or Defendant "the faintest idea as to the actual damages" they have allegedly sustained. (Dkt. 10 at 19) (quoting *Martin v. Asset Acceptance, LLC*, No. 11-CV-6256, 2012 WL 3042524, at *2 (N.D. Ill. July 25, 2012) (internal quotation marks omitted)). Defendant suggests allegations of missed work or lost wages would suffice, had Plaintiffs made them. (*Id.* at 9–10). This ground for dismissal,

---

[23] Plaintiffs contend that Defendant is in violation of the Texas Disciplinary Rules of Professional Conduct by operating as a debt collector while using an assumed name. (Dkt. 19 at 15). In the process, however, Plaintiffs concede that if that is the case then Defendant would in fact have the required bond. (*Id.* at 16). Defendant vehemently disagrees with this characterization of their conduct. (Dkt. 20 at 1–2). The Court does not address this issue, as it is irrelevant to whether Defendant had obtained and was covered by the required surety bond.

Defendant argues, is applicable to the entire Complaint. *Id.* The Court addresses it here as applied to Plaintiffs' FDCPA claims, and addresses it as applies to the State law claims in Analysis §§ 2(E) and 3(C) *infra.*

Defendant is mistaken as to the applicability of *Martin* to the FDCPA claims. *Martin* involved a claim that the defendant had negligently violated certain sections of the Fair Credit Reporting Act ("FCRA"). *Martin*, 2012 WL 3042524, at \*2. Because a person who negligently violates any section of the FCRA is liable only for actual damages, 15 U.S.C. § 1681o(a), the *Martin* court determined that alleging facts plausibly supporting actual damages was an element of that particular claim. *See Martin*, 2012 WL 3042524, at \*2–4 (relying heavily on *Johnson v. CGR Servs., Inc.*, No. 04 C 2587, 2005 WL 991770 (N.D. Ill. Apr. 7, 2005), which held the same); *accord King v. Bank of America, N.A.*, No. C–12–04168 JCS, 2012 WL 4685993, at \*5 (N.D. Cal. Oct. 1, 2012) (explaining that "[s]ome courts have . . . required a plaintiff to plead actual damages in order to allege an FCRA claim based on a negligent violation" and pointing to the *Martin* and *Johnson* courts as exemplars). Because the defendant in *Martin* had pled no facts supporting actual damages, the court dismissed his negligence-based FRCA claims. *Id.* at \*3–4.[24]

But unlike under the negligence-based sections of the FCRA, an individual who violates the FDCPA may be liable for actual damages *and* statutory damages. *Compare* 15 U.S.C. § 1692k *and* 15 U.S.C. § 1681o(a). This removes the rationale that drove the *Martin* and *Johnson* courts to require the pleading of facts plausibly showing actual damages. *Accord Martin*, 2012 WL 3042524, at \*4 (when the FCRA section invoked by the plaintiff allowed for both statutory and actual damages, facts plausibly alleging actual damages were no longer required for the claims to pass muster).

A case more apposite to the situation here is *Alevsky v. GC Services Limited Partnership*, 2014 WL 1711682 (E.D.N.Y. Apr. 30, 2014). In *Alevsky*, which involved an FDCPA claim, the defendant

---

[24] It should be noted that the *Martin* court had already allowed the plaintiff to amend his complaint. *Martin*, 2012 WL 3042524, at \*4.

argued that the plaintiff's request for actual damages "should be dismissed as conclusory" because it

"merely assert[ed] an entitlement to actual damages without putting forward any factual basis

supporting that claim." *Id.* at *1. The *Alevsky* court soundly rejected that contention:

> [A]s a general matter, damages are not an element of a cause of
> action. A Rule 12(b)(6) motion therefore cannot challenge the
> demand for relief, since that motion tests the legal sufficiency of
> allegations (*i. e .,* the "short and plain statement of the claim showing
> that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2)), not the
> request for relief (which need only be "a demand for the relief
> sought," Fed. R. Civ. P. 8(a)(3)). Likewise, the facial sufficiency of a
> claim under Rules 8(a)(2) and 12(b)(6)—including its plausibility
> under *Iqbal* and *Twombly*—does not depend on the relief
> requested. *See* 5 Wright & Miller, *Federal Practice and Procedure:
> Civil* § 1255 (3d ed. 2004) ("The sufficiency of a pleading is tested by
> the Rule 8(a)(2) statement of the claim for relief and the demand for
> judgment is not considered part of the claim for that purpose."). In
> other words, the plaintiff's complaint need not allege the *results* of the
> defendant's wrongful conduct; the complaint only need allege the
> elements of that wrongful conduct, and request relief as appropriate.

*Id.*[25]

The Court finds the analysis above convincing. There is no requirement that a complaint

allege facts plausibly stating that the plaintiff has suffered actual damages unless actual damages can

be construed to be an element of the specifically invoked cause of action. The Court therefore

denies Defendant's motion to dismiss any FDCPA claims based on Plaintiffs' failure to allege facts

sufficient to support actual damages.[26]

---

[25] *Accord Abramov v. I.C. Sys., Inc.*, 65 F. Supp. 3d 323, 326–27 (E.D.N.Y. 2014) (rejecting the defendant's contention, involving an FDCPA claim, that the plaintiff had failed to allege sufficient facts to entitle him to actual damages; "[n]othing in the FDCPA requires an allegedly aggrieved party to plead 'actual damages' in detail . . . to be sure, in order to recover 'actual damages' at the trial, the Plaintiff will be required to prove his damages with some specificity"); *Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.*, 242 F. Supp. 2d 273, 277–78 (S.D.N.Y. 2002) (rejecting a Rule 68 offer of judgment on the basis that it did not offer actual damages; "[a]lthough the plaintiffs' Complaint did not specifically allege actual damages," it was enough that the plaintiffs had stated that they had been "damaged in an amount to be determined at trial," which sufficiently notified the defendants that the plaintiffs sought actual damages as allowed under the FDCPA); *Ortega v. Collectors Training Inst. of Ill., Inc.*, No. 09–21744–CIV, 2011 WL 241948, at *4–5 (S.D. Fla. Jan. 24, 2011) (citing to *Sibersky* for the proposition that "in the context of FDCPA claims, a specific allegation regarding actual damages is not necessary to state a claim for such damages").

[26] Additionally, as discussed in Analysis § 2(E) *infra*, even if there were such a requirement under the FDCPA, it appears that Plaintiffs have pled facts that plausibly support that they have suffered actual damages.

**2. Defendant's Stated Grounds for Dismissing Plaintiffs' TDCA Claims**

    ***A. Defendant Was Not Operating Without a Surety Bond in Violation of Texas Law***

    Plaintiffs allege that Defendant violated the TDCA in the same way Defendant violated the FDCPA by failing to comply with the surety bond requirements of Texas Finance Code § 392.101. For the reasons discussed in Analysis § 1(F) *supra*, the Court grants Defendant's motion to dismiss any TDCA claim based upon Plaintiffs' allegation that Defendant was not in compliance with Texas Finance Code § 392.101 at the time Defendant collected Plaintiffs' debt.

    ***B. Defendant's Failure to Itemize the Debt is Not Actionable Under the TDCA***

    Defendant points out that the TDCA and the FDCPA are very similar. (Dkt. 10 at 14). Accordingly, they argue that because failure to itemize debt is legally uncognizable under the FDCPA, that conduct is similarly legally uncognizable under the TDCA. Defendant is correct as to the first contention and incorrect as to the second.

    As discussed in Applicable Law § 4 *supra*, conduct barred under the FDCPA is similarly barred under the TDCA. Because the Court has already determined that itemization is actionable under the FDCPA, Analysis § 1(A) *supra*, the Court denies Defendant's motion to dismiss any of Plaintiffs' TDCA claims based on Defendant's failure to itemize the debt.

    ***C. Plaintiffs Have Not Alleged Sufficient Facts to Support Any Claim Based on the Unreasonableness of the PPAF***

    Defendant alleges that Plaintiffs have not sufficiently pled the unreasonableness of the PPAF. For the reasons set out in Analysis § 1(E)(ii) *supra*, the Court denies Defendant's motion to dismiss any of Plaintiffs' TDCA claims that are predicated on the assertion that the PPAF was unreasonable under the TRPOPA.

    ***D. Defendant Did Not Fail to Validate a Disputed Debt***

    Defendant requests that any claims under the TDCA based on their failure to validate the debt be dismissed because (1) Plaintiffs base that claim on the Defendant's failure to itemize the

debt,[27] which is not actionable under either the FDPCA or the TDCA, and because (2) Plaintiffs never sought to dispute the debt.

First, the Court has already ruled that a debt collector's failure to itemize the debt when communicating with a debtor may be actionable under the FDCPA and the TDCA, Analysis §§ 1(A) and 2(B) *supra*, so Defendant's motion to dismiss on the ground that it is not is denied.

Second, the Plaintiffs have alleged violations of TDCA §§ 392.101, 392.303, and 392.304. None of these sections includes any requirement that a debt collector validate a debt when a debtor disputes it. The Court is unable to ascertain what claim under the TDCA Defendant is attempting to have dismissed. This is a consistent problem with both Plaintiffs' Complaint and Defendant's Motion to Dismiss: rarely does either party argue with any specificity which section of the statutes invoked they are addressing.

Regardless of the muddiness of the Complaint and filings thereto, Plaintiffs do not allege that they attempted to dispute the debt at any point. Defendant's motion to dismiss any claims predicated on Plaintiffs' failure to validate a disputed debt is granted.[28]

### E. Plaintiffs Have Failed to Allege Facts Supporting Actual Damages

Defendant asks the Court to dismiss Plaintiffs' TDCA claims for the same reasons listed in Analysis § 1(G), *supra*. The TDCA provides that "a person may sue for" only injunctive relief and actual damages. Tex. Fin. Code Ann. § 392.403.[29] Injunctive relief is inappropriate here, so Plaintiffs must allege facts plausibly showing that they have suffered actual damages in order to state a claim

---

[27] Plaintiffs describe Defendant's failure to itemize the debt as "failing to validate a disputed debt." (Dkt. 1, ¶ 60(c)). This language suggests that Plaintiffs meant to invoke FDCPA § 1692g, which governs the validation notice and dispute procedures that debt collectors must follow. Failing to itemize the debt, however, has nothing to do with "validating a disputed debt," which involves what steps a debt collector must take when an alleged debtor challenges the validity of an alleged debt.

[28] Due to the Court's confusion over what exactly the parties are contesting, the Court stresses that the claims dismissed include only those which are predicated upon Plaintiffs affirmatively disputing the debt and Defendant's failure to take steps to validate that disputed debt.

[29] A violation of the TDCA is also a deceptive practice, so remedies provided under the Texas Deceptive Trade Practices-Consumer Protection Act are also available. TEX. FIN. CODE ANN. § 392.404. However, that statute also requires a showing of actual damages for recovery. TEX. BUS. & COM. CODE ANN. § 17.50(a).

for which relief can be granted. *See American Const. Benefits Grp., LLC v. Zurich American Ins. Co.*, No. 3:12–CV–2726–D, 2014 WL 144974, at *5 (N.D. Tex. Jan. 15, 2014) (a plaintiff alleging a violation of Tex. Ins. Code Ann. § 541.060(a)(4)(A), which requires a person sustain actual damages to bring an action, must plausibly allege facts supporting actual damages); *Avila v. JPMorgan Chase Bank, N.A.*, No. H–14–3502, 2015 WL 1648940, at *3 (S.D. Tex. Apr. 13, 2015) (when the only liability applicable to a defendant under the statute in question is for actual damages, the plaintiff must allege actual damages resulting from the defendant's actions to survive a rule 12(b)(6) motion to dismiss (citing *Whittier v. Ocwen Loan Servicing, L.L.C.*, 594 F. App'x 833, 836 (5th Cir. 2014))); *see also* Analysis § 1(G) (discussing pleading actual damages in the FDCPA context).

The Court finds that Plaintiffs have alleged facts plausibly supporting the conclusion that they suffered actual damages through the payment to Defendant of illegal penalties or unlawful liquidated damages and an unreasonable PPAF. The Court recognizes that the facts pled by Plaintiffs in support of their allegations that Defendant charged and collected illegal penalties or unlawful liquidated damages are sparse. However, given that the same facts which support every other claim alleged in the Complaint will be relevant to the validity of the claims based on the collection of illegal penalties or unlawful liquidated damages, and for the same reasons that the Court declines to dismiss Plaintiffs' claims based on the unreasonableness of the PPAF, the Court declines to dismiss Plaintiffs' TDCA claims on this ground.

### F. Plaintiffs' Claims Based on Defendant's Collection of Illegal Penalties or Unlawful Liquidated Damages are Barred by the Statute of Limitations

Defendant argues that the only facts Plaintiffs have alleged that might support an inference that Defendant charged and collected illegal penalties or unlawful liquidated damages involve conduct that occurred more than two years ago, and so liability is barred by the TDCA's statute of limitations. (Dkt. 10 at 15). The Court reads Plaintiffs' Complaint to allege that the debt that they have in some part paid, charged and collected by Defendants via both debt collection letters,

included illegal penalties or unlawful liquidated damages. Because that conduct occurred less than one year ago, and because Plaintiffs have sufficiently pled actual damages as a result, Analysis § 2(E) *supra*, any bar created by the TDCA statute of limitations is inapplicable. The Court therefore denies Defendant's motion to dismiss on this basis.

### 3. Defendant's Stated Grounds for Dismissing Plaintiffs' Texas Common Law Claims

#### A. Plaintiffs Have Not Adequately Stated a Claim of Negligent Misrepresentation

Plaintiffs claim that Defendant committed the common law tort of negligent misrepresentation when it supplied, in the course of its business and in transactions in which it had a financial interest, "false and misleading information [by omitting the basis for the total obligation and failing to separate that from other charges] to coerce and exploit Plaintiffs . . . into paying unreasonable and unconscionable fees under the threat of foreclosure proceedings." (Dkt. 1, ¶¶ 71–73).

Defendants respond with three separate grounds as to why Plaintiffs' negligent misrepresentation claim should be dismissed. The Court addresses each below.

##### i. Plaintiffs Have Not Sufficiently Alleged That Defendant Charged and Collected an Unreasonable or Unconscionable Fee

Defendant argues that Plaintiffs have not shown they were harmed because they have failed to sufficiently allege that Defendant charged and collected unreasonable or unconscionable fees. For the same reasons discussed in Analysis §§ 1(E)(ii) and 2(E) *supra* regarding Plaintiffs' claims based on Defendant's collection of illegal penalties or unlawful liquidated damages and an unreasonable PPAF, the Court denies Defendant's motion to dismiss on this ground.

##### ii. Defendant Had No Duty to Disclose Information to Plaintiffs

According to Defendant, they had no duty to disclose the allegedly omitted information, i.e. no duty to itemize or explain the basis of the total obligation, because the relationship between the parties was "not the kind of confidential or fiduciary relationship that would [have] give[n]

[Defendant] a duty to disclose information to [Plaintiffs]." (Dkt. 10 at 16). Defendant thus argues that their non-disclosure, if not in breach of a duty to disclose, cannot be the basis for Plaintiffs' negligent misrepresentation claim. *Id.*

In Texas, "whether a duty to disclose exists is a question of law." *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). Several Texas courts of appeals have held that "[a] duty to disclose arises in four situations: (1) when there is a fiduciary relationship; (2) when one voluntarily discloses information, the whole truth must be disclosed; (3) when one makes a representation, new information must be disclosed when that new information makes the earlier representation misleading or untrue; and (4) when one makes a partial disclosure and conveys a false impression." *Omni Metals Inc. v Poe & Brown of Texas, Inc.*, 2002 WL 1331720, at *3 (Tex. App.—Houston [14th Dist.] June 13, 2002, pet. denied) (quoting *Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App.—Houston [14th Dist.] 1997, pet. denied).[30] Similarly, "[i]t is well settled that even though one does not have a duty to act, if one acts voluntarily, he must do so with due care and is generally liable for negligence." *Brown & Brown of Texas, Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 388 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (quoting *Great Am. Mortg. Investors v. Louisville Title Ins. Co.*, 597 S.W.2d 425, 430 (Tex. App.—Fort Worth 1980, pet. denied)) (internal quotation marks omitted).[31]

The Court finds that Defendant had a duty to disclose under either category two or category four above. The Court therefore denies Defendant's motion to dismiss the negligent misrepresentation claim based on the argument that Defendant had no duty to disclose information to Plaintiffs.

---

[30] *Accord Brown & Brown of Texas, Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 384–86 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Ralston Purina Co. v. McKendrick*, 850 S.W.2d 629, 636 (Tex. App.—San Antonio 1993, pet. denied); *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001) (pointing out, without comment, that a number of Texas courts of appeals have endorsed this approach).

[31] *Cf. Smith v. Nat'l Resort Cmty., Inc.*, 575 S.W.2d 655, 658 (Tex. 1979) ("Where there is a duty to speak, silence may be as misleading as a positive misrepresentation of existing facts."); *Bradford*, 48 S.W.3d at 755 ("[S]ilence may be equivalent to a false misrepresentation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent." (citing *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex. 1995))).

### iii. Plaintiffs Do Not Allege Defendant Failed to Exercise Reasonable Care

Under Texas law, to succeed on a claim of negligent misrepresentation, the plaintiff must show in part that the defendant "did not exercise reasonable care or competence in obtaining or communicating the [false] information" at issue. *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). Defendant argues that Plaintiffs have failed to adequately allege this element of the cause of action because Plaintiffs did not "plead anything that could be construed as satisfying the element that Defendant[] did not use reasonable care in making the representation." (Dkt. 10 at 16–17) (quoting *Omrazeti v. Aurora Bank FSB*, No. SA:12–CV–00730, 2013 WL 3242520, at *8 (W.D. Tex. June 25, 2013)).

The Court has already declined to dismiss Plaintiffs' claims that Defendant charged and collected from Plaintiffs illegal penalties or unlawful liquidated damages and an unreasonable PPAF. For this reason, the Court finds that Plaintiffs have also alleged sufficient facts to allow the Court to reasonably infer that Defendant did not exercise reasonable care or competence in communicating the information at issue. Defendant is a law firm, plausibly charged illegal fees, penalties, and damages to Plaintiffs, and omitted from their communications information regarding the basis for those obligations. Defendant's motion to dismiss on this ground is denied.

### B. Plaintiffs Have Not Stated a Claim for Tortious Interference

Defendant argues that Plaintiffs have failed to state a claim for tortious interference because they have inadequately pled the facts regarding Defendant's charging and collecting from them of an unreasonable PPAF and illegal penalties or unlawful liquidated damages. Defendant also points to the two-year Texas statute of limitations on claims of tortious interference for the same reasons as discussed in Analysis § 2(F) *supra*. The Court denies Defendant's motion to dismiss the tortious interference claim on these grounds on the same bases as it declined to dismiss the claims discussed in Analysis §§ 1(E)(ii), 2(E) and 2(F).

### C. Plaintiffs Have Failed to Allege Facts Supporting Actual Damages

The Court denies Defendant's motion to dismiss either the tortious interference claim or the negligent misrepresentation claim on these grounds for the same reasons discussed in Analysis §§ 1(E)(ii) and 2(E).

### IV. CONCLUSION

Defendant's Motion to Dismiss (Dkt. 10) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court **DISMISSES WITHOUT PREJUDICE** any of Plaintiffs' claims based on allegations that Defendant is operating as a debt collector in Texas in violation of Texas Finance Code § 392.101 and any of Plaintiffs' claims based on Defendant's failure to validate a debt after Plaintiffs disputed the validity of that debt. All other relief requested is **DENIED**.

**SIGNED** on June 24, 2016.

_____

ROBERT PITMAN

UNITED STATES DISTRICT JUDGE